GANSKY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-159-CR

ERIC EUGENE GANSKY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE COUNTY COURT AT LAW OF PARKER COUNTY

------------

OPINION

------------

Appellant Eric Eugene Gansky appeals from his DWI conviction claiming the trial court erroneously denied his motion to suppress.  We affirm.

Factual Background

In the early morning hours of November 10, 2002, Parker County Sheriff’s Deputy Stella Perkins was on patrol, stopped in the I-20 median facing west.  She was monitoring traffic with radar and her CB radio when she heard truck drivers asking for police assistance, saying there was a white car traveling on the wrong side of the interstate.  She had previously noticed a white car driving west in the westbound lane because it was driving relatively slow and because there had been little other traffic at that time.  The truck drivers said the white car was driving east in the westbound lane at the 404 mile-marker and were asking for a police officer.  While Deputy Perkins was trying to communicate with the truck drivers about the white car, a semi-truck pulled over onto the shoulder and the driver got out and started waving at her, pointing back towards the east.  Deputy Perkins believed the truck driver was signaling to her regarding the white car.  Without stopping, she proceeded eastbound trying to follow the car as truck drivers continued giving her the car’s location by mile-marker.  One of the truck drivers told her the white car almost hit a semi-truck at the 405 mile-marker as it continued eastbound in the westbound lane, and the truck driver who was almost hit stated so over the CB radio.  

Truck drivers continued to monitor the vehicle as it passed the 406 mile-marker and then told Deputy Perkins that it crossed the median near the 407 mile-marker back into the eastbound lane of traffic and then exited at the 407 exit.  Once Deputy Perkins heard this she also exited at the 407 exit and continued on the eastbound access road where the truck drivers said the white car was.  Then, the truck drivers said the car had pulled into the Burger King-Texaco station at the corner of South Main and the access road.  As she pulled into the parking lot, one of the truck drivers told her that the white car was driving through the gas pumps and going across the parking lot.  At this point, Deputy Perkins saw the only white car in the parking lot, driving through the pumps, and initiated a traffic stop.  Deputy Perkins arrested appellant for DWI.  After the trial court denied appellant’s motion to suppress, he entered a negotiated plea of guilty and the trial court assessed punishment at 180 days’ confinement, probated for twenty-four months, with a $600 fine.  

Issue Presented

In one issue appellant challenges the trial court’s ruling denying his motion to suppress based upon the illegality of the officer’s stop.  Appellant contends that the officer had insufficient corroboration of the anonymous tip to justify the 
Terry
 stop of his vehicle.

Standard of Review

The Fourth Amendment protects against unreasonable searches and seizures.  
U.S. Const
. amend. IV.  For an arrest to be justified under the Fourth 
 Amendment, it must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity.  
Henry v. United States
, 361 U.S. 98, 102, 80 S. Ct. 168, 171 (1959).  A detention, however, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  
Terry v. Ohio
, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); 
Carmouche v. State
, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche
, 10 S.W.3d at 327; 
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State,
 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State,
 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
 State v. Ross,
 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard, 
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State,
 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002);
 
State v. Ballman, 
157 S.W.3d 65, 67 (Tex. App.—Fort Worth 2004, pet. ref’d)
; Harrison v. State, 
144 S.W.3d 82, 85 (Tex. App.—Fort Worth 2004, pet. granted)
; Best,
 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.  
Johnson,
 68 S.W.3d at 652-53.  

When the trial court does not file findings of fact, we are to view the evidence in the “light most favorable to the trial court’s ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.”
  Ross, 
32 S.W.3d at 855; 
Guzman, 
955 S.W.2d at 89; 
State v. Maldonado, 
No. 01-03-00774-CR, 2004 WL 2306703, at *2 (Tex. App.—Houston [
1st Dist.] Oct. 14, 2004, no pet.).

While the trial court filed no written findings of fact or conclusions of law in connection with the suppression hearing, the trial judge concluded that there were “several corroborations” of the tips.  Because 
it is clear from the trial court’s statements on the record, and because the record supports the trial court’s conclusions, we must give the trial court almost total deference in reviewing those historical facts but review de novo the application of the law to those facts.  
See
 
Ross
, 32 S.W.3d at 856-57.
 

Discussion

In this case, the arresting officer, Deputy Perkins, was the only person to testify at the suppression hearing.  The only fact that might have been in issue was whether the vehicle appellant was driving had actually been in an accident.  Appellant contends that because the white car Deputy Perkins stopped had no damage, it could not have been the vehicle the truck drivers were describing as driving the wrong way or striking a semi-truck; thus, Deputy Perkins would not have had a reasonable suspicion to stop appellant’s white car.  However, a closer look at Deputy Perkins’s testimony shows some equivocation as to whether the truck drivers reported that the suspect vehicle had actually struck a “semi.”

Deputy Perkins testified that she heard a report that the vehicle had “almost hit or they thought he had actually hit a semi at the 406 mile-marker.”  Appellant cross-examined Deputy Perkins extensively regarding this issue in an effort to cast doubt on whether she had, in fact, stopped the correct vehicle since appellant’s car had no damage.  But, as the testimony shows, there was no definitive testimony that the white car 
actually
 struck a semi, only that it 
almost
 had.  Because this is the only potential fact issue that might have been determined by the trial court, we apply the bifurcated standard to the trial court’s findings and rulings.  
See id.
 at 856.  

We must conclude that the trial court implicitly found that the white car described by all the truck drivers was not actually in a collision and that it had only narrowly missed a semi because appellant’s white car had no damage.  Further, in reviewing Deputy Perkins’s testimony on direct examination, it is apparent that one of the truck drivers specifically identified the white car while it actually drove around in the Burger King-Texaco parking lot at the same time Deputy Perkins arrived at the parking lot.  This particular testimony gives further credence to the trial court’s apparent conclusion that the white car only “almost” struck another semi.  Applying great deference to the trial court’s implicit findings, we turn to a review of the trial court’s application of law to these facts.  
Id. 
at
 
857-58
.

Applicable Law Regarding Investigative Detentions

Appellant cites two cases, 
Alabama v. White 
and
 State v. Simmang,
 
to support his contention that Deputy Perkins had insufficient corroboration to justify her investigative stop and detention because Deputy Perkins was relying solely on anonymous tips. 
 Alabama v. White, 
496 U.S. 325, 329, 110 S. Ct. 2412, 2415 (1990);
 State v. Simmang, 
945 S.W.2d 219, 223 (Tex. App.—San Antonio 1997, no pet.).  Conversely, we believe this case is distinguishable from 
Simmang, 
but agree it is controlled by the principles announced in 
White
, as well as other more recent Texas cases discussing anonymous tips and reasonable suspicion.  
See White, 
496 U.S. at 329, 110 S. Ct. at 2415;
 Brother v. State
, 166 S.W.3d 255 (Tex. Crim. App. 2005)
; Ross, 
32 S.W.3d at 853
; Pipkin v. State,
 114 S.W.3d 649 (Tex. App.—Fort Worth 2003, no pet.)
;
 
State v. Stolte, 
991 S.W.2d 336 (Tex. App.—Fort Worth, 1999, no pet.); 
Glover v. State
, 870 S.W.2d 198 (Tex. App.—Fort Worth 1994, pet. ref’d).

In 
Alabama v. White, 
the United State Supreme Court was asked to review the Alabama Court of Criminal Appeals’s reversal of a trial court’s ruling denying a defendant’s motion to suppress evidence seized during a stop of the defendant’s vehicle.  
496 U.S. at 328, 110 S. Ct. at 2415.  The Supreme Court reversed the Alabama court’s determination holding that the officer who received a detailed anonymous tip on the location of a particular vehicle and occupant had reasonable suspicion to stop, detain, and investigate.  Police had received a tip that the respondent, White, would be leaving a particular apartment at a particular time in a certain vehicle, that she would be going to a particular destination, and that she was in possession of cocaine.  Based on this information, officers went to the apartment complex and waited while White emerged from the designated apartment and got into the described vehicle.  They then followed her to the identified motel, at which point they stopped her right before she arrived.  Apparently, White gave the officers consent to search her vehicle where they found marijuana.  After they arrested her, they found cocaine in her purse.  
Id.
 at 327-28, 110 S. Ct. at 2414-15.

The Supreme Court found sufficient corroboration of the anonymous tip to support the stop.  
Id. 
at 331, 110 S. Ct. at 2416.  Specifically, the Supreme Court reviewed the totality of the circumstances to conclude that the level of the reliability of the tip was increased because the officers had been able to corroborate much of the content of the tip.  
Id. 
at
 
329, 110 S. Ct. at 2415.  The Supreme Court pointed to certain details of the tip that the officers had been able to corroborate such as the apartment from which the respondent left, the description of the vehicle she entered, the time she left, and her likely destination.  
Id. 
at
 
331, 110 S. Ct. at 2416-17.  The Supreme Court focused not only on the content of the information but its degree of reliability, noting that both quantity and quality of information contribute to the totality of the circumstances surrounding an analysis of the reasonableness of the officer’s suspicion.  The amount of reliability obviously increases with corroboration of future events described by the caller.  
Id. 
at
 
330-31, 110 S. Ct. at 2416.

Similarly, the Texas Court of Criminal Appeals 
upheld this court’s affirmance of a trial court’s denial of a motion to suppress in a DWI case.
  Brother v. State,
 85 S.W.3d 377 (Tex. App.—Fort Worth 2002), 
aff’d 
166 S.W.3d 255 (Tex. Crim. App. 2005)
.  In 
Brother
, the appellant challenged the officer’s stop claiming that because the officer himself had not personally observed Brother’s erratic driving and instead relied on a citizen-informant’s 911 call to police dispatch, the officer lacked reasonable suspicion to stop him.  
Id.
 at 381-82.  In 
Brother, 
the citizen-informant continued to follow the vehicle while remaining on her cell phone with the 911 dispatcher until the officer stopped the suspect.  Additionally, the citizen gave Brother’s license plate number to the dispatcher and turned on her hazard lights while following Brother as instructed by the dispatcher.  The officer said he was able to correctly identify the vehicle because he had the license plate number and a visual of the citizen’s car with her hazard lights on.  Both the arresting officer and the citizen testified to these facts at the suppression hearing. 
Id.
 at 379-80.

The trial court denied Brother’s motion to suppress, this court affirmed the trial court, and the court of criminal appeals upheld our decision.  
Id. 
at 385; 
see also 
166
 S.W.3d at 261.  The court of criminal appeals noted that the “factual basis for stopping a vehicle need not arise from the officer’s personal observation, but may be supplied by information acquired from another person.” 
 Brother,
 166 S.W.3d at 257 (citing 
Adams v. Williams
, 407 U.S. 143, 147, 92 S. Ct. 1921, 1923-24 (1972)).  
The court of criminal appeals emphasized the wide acceptance of citizen-informant reliability that is generally shown by the very circumstances giving rise to the incriminating information the citizen is reporting.  
Id.
 at 258. 

Further, citing to this court’s opinion in 
Pipkin v. State
, the court of criminal appeals noted that we upheld the trial court’s denial of Pipkin’s challenge to the officer’s investigatory stop because the citizen-informant  relayed sufficient facts to 911 to justify the stop.  
Id
. (citing 
Pipkin
, 114 S.W.3d at 652-53).
 
 In 
Pipkin
, the citizen-informant detailed the vehicle’s extremely slow speed, observed that the driver was driving in the fast lane of traffic while steering with his knees and smoking what appeared to be a crack pipe, gave a description of the vehicle and its location, and additionally provided his identification and contact information to the dispatcher.  
Pipkin, 
114 S.W.3d 
at 652-53.  In 
Pipkin
 we noted that the citizen-informant’s “veracity, reliability, and basis for knowledge are highly relevant in determining the value of the caller’s report.”  
Id
. at 654.  We also noted that trial courts should look to not only the content of the information but the quality of the information in reviewing an officer’s decision to stop and detain.  
Id.  

Corroboration by the law enforcement officer of any information related by the informant may increase the reliability of the information.  “[C]orroboration” in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed.  Rather corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified. 

Id.
 at 654 (citations omitted).

As we observed in 
Pipkin
, and the court of criminal appeals emphasized in 
Brother
, the reliability of the citizen-informant is greater than that of a paid informant.  Further, the fact that the information being supported by the officer’s conclusion that an investigative stop was justified and his ability to identify the correct vehicle increased the reliability of the information.  
Brother, 
166 S.W.3d at 258.

Similarly, in 
State v. Stolte
, we reversed the trial court’s order suppressing evidence from an officer’s investigatory stop based upon a citizen-informant’s anonymous cell phone call regarding a possible DWI.  
991 S.W.2d at 339.  In 
Stolte
, the dispatcher was able to give the officer a description of the suspect vehicle, including color, make, and style as well as its license plate number.  
Id.
  Further, as in 
Brother
, the caller continued to follow the truck, gave the dispatcher updates as they drove, provided the location and description of the vehicle, including the exit location of the vehicle, pulled in behind the officer’s patrol car once the officer stopped the driver, and then identified himself to the officer.  Both the officer and the citizen-informant testified at the suppression hearing.  We held that although the citizen-informant’s identification was initially unknown to the officer who stopped the vehicle, the officer knew that the citizen-informant was continuing to monitor the suspect vehicle, which increased the reliability of the information the citizen-informant was providing.  
Id.
 at 340.  Moreover, the information the citizen-informant provided regarding the identity of the vehicle, including the license plate number, increased the likelihood that the officer had stopped the correct vehicle.

Even if we compare the facts of this case with those of the 
Simmang
 case cited by appellant, we still reach the same result.  In 
State v. Simmang
, the San Antonio Court of Appeals upheld a trial court’s suppression order.  945 S.W.2d at 225.  There, an officer received one call from an anonymous person who claimed that a lone white male was committing a sexual offense in a “gold-colored four door sedan” in a parking lot at a particular intersection.  
Id.
 at 220.  As in our case, no license plate, make, or model was provided.  When the officer approached and looked in the vehicle, he claimed he smelled a strong odor of marijuana coming from the vehicle.  
Id.
 at 221.  The officer ordered the occupant from the vehicle, searched him, and turned back toward the vehicle where he saw a weapon in plain view on the floor of the vehicle.  
Id.
  In searching the vehicle, the officer found less than two ounces of marijuana.  
Id.
  The trial court granted the occupant’s motion to suppress and the appellate court upheld that ruling.  
Id.
 at 225.  The arresting officer was the only one to testify at the hearing.  
Id
. at 220-21.

The appellate court noted that there was a discrepancy in the officer’s  testimony from his written offense report that said he did not smell the odor until he had occupant outside and was searching him as opposed to upon approaching the vehicle.  
Id. 
at 221.  Pointing to this discrepancy and giving great deference to the trial court’s findings, the appellate court concluded that the trial court must not have believed the officer’s testimony.  
Id.  
Also, the appellate court noted the anonymous nature of the tip, the lack of detail regarding the identification of the vehicle or the suspect, and the lack of corroboration.  
Id. 
at 224.  In other words, the low quantity of the tips coupled with the lack of corroboration either by other witnesses or officers substantially diminished the quality of this anonymous tip.

In 
Stolte
, we also addressed another factor to consider in evaluating the totality of the circumstances surrounding the reasonableness of an officer’s stop: the urgency of the particular situation.  
991 S.W.3d at 342.  In 
Stolte
, an anonymous citizen-informant had witnessed the suspected driver driving so slowly in the middle lane of a high traffic highway that drivers in all lanes were slowing down.  
Id. 
at 340.  The citizen-informant had also observed the driver veering in and out of lanes such that he appeared to be a danger to himself as well as to others. 
 Id.
  We held that, under the facts of that case, it would have been unreasonable, in light of the “important public and private interests involved,” to have delayed the stop since the officer had located the described vehicle where the citizen-informant said it was in order to further corroborate the information that had been relayed to him.  
Id.
 at 343.  In other words, the totality of the circumstances also includes an evaluation and weighing of both the “important public and private interests involved.”  
Id.  
Here, the important public interest is extremely compelling; a driver driving on the wrong side of an interstate highway creates an extremely dangerous situation not only for the driver, but for the public as well.  Thus, we conclude that the urgency of the situation also contributed to the reasonableness of the officer’s stop.

Admittedly, there are some factual distinctions in the case at bar from the cases we have discussed, but we conclude that more of the factors militate in favor of the trial court’s ruling.  The anonymous tip here was really a multitude of anonymous tips; Deputy Perkins testified that she knew she talked to at least five different truck drivers, plus the truck driver who stopped and flagged her from the side of the road.  The tips actually came from a group of anonymous tipsters who would have had a mutual interest in insuring that a driver driving the wrong way on an interstate was stopped and removed.  Moreover, Deputy Perkins testified on cross-examination that she heard multiple truck drivers identify the white car as driving in the wrong direction and that both the number of sightings along with the “emotion in their voice[s]” led her to believe they were frantically describing what they were simultaneously observing, all of which support the veracity and reliability of the information Deputy Perkins was receiving.  “Unsolicited information concerning a crime in progress provided to police in a face-to-face encounter by a concerned citizen who is not connected with police and is not a paid informant is inherently reliable.”  
Harrison
, 144 S.W.3d at 86; 
see also State v. Sailo
, 910 S.W.2d 184, 188-189 (Tex. App.—Fort Worth 1995, pet. ref’d).  Although the information Deputy Perkins heard was not delivered face-to-face, at least one of the truck drivers had stopped, which would have at least made him identifiable had she stopped to get his identification.  Thus, both the quantity of callers and their contemporaneous sightings increased the reliability and accuracy of their descriptions.  

Although tips came in from several truck drivers, there was at least one truck driver who watched and described the vehicle’s exit from the highway, as well as its movement through a specifically identified parking lot.  While Deputy Perkins’s own testimony regarding the vehicle’s near-crash was equivocal, we cannot say that the trial court unreasonably concluded that appellant’s vehicle might have had no damage.  Critically, the potential danger and extreme risk to the public further justified Deputy Perkins’s conclusion that an investigative detention was not only reasonable but necessary.  Although  Deputy Perkins lacked a license plate number, make, or model of the vehicle, she followed and identified the vehicle by virtue of the multiple tipsters.  For all the foregoing reasons, we conclude and hold, under the totality of the circumstances, that the trial court properly denied appellant’s motion to suppress.  We overrule appellant’s sole issue.

Conclusion

Because we overrule appellant’s sole issue, we affirm the trial court’s suppression ruling and affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED:  October 13, 2005