NUMBER 13-07-00673-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MICHAEL GABRISH, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Yañez
 


 Appellant, Michael Gabrish, pursuant to a plea bargain, pleaded guilty to driving
while intoxicated. (1) Appellant was sentenced to nine years and six months in the Texas
Department of Criminal Justice Institutional Division. (2) By two issues, appellant asserts that
the trial court erred when it denied his motion to suppress and when it overruled his
objection to alleged hearsay. We affirm.

I. Background Appellant was indicted for the offense of driving while intoxicated. Appellant filed
a motion to suppress seeking to suppress any evidence obtained after being stopped by
a police officer. Appellant argued that the officer did not have reasonable suspicion to stop
him and did not have probable cause to arrest him. (3) The trial court conducted a hearing
on appellant's motion. The State presented the testimony of Gayle Connolly, Bob Merrow,
and Nicholas Kless, the police officer who detained and arrested appellant. The trial court
denied appellant's motion to suppress.

 In a plea agreement with the State, appellant pleaded guilty and agreed to a
sentence of nine years and six months' confinement, and the State agreed to dismiss a
paragraph in the indictment alleging that appellant was a habitual felony offender. 
Appellant appeals the trial court's denial of his motion to suppress. (4)

II. Motion to Suppress Hearing

 At the motion to suppress hearing, Connolly testified that while at a restaurant in a
shopping center, she observed a car driven by the appellant screech to a stop as he
attempted to park his vehicle. According to Connolly, after finally parking his car, appellant
began rifling through the back seat of the vehicle, and it appeared that appellant was
searching for cigarettes, which he eventually located. Appellant exited the vehicle and
began urinating in the parking lot. Connolly testified that appellant was "obviously
intoxicated" because he was staggering, fumbling with his cigarettes and lighter, and
urinating in a public place. Connolly stated, "It was patently clear that [appellant] was
intoxicated." Connolly saw appellant enter and exit another store in the shopping center;
she assumed he entered a nearby bar. According to Connolly, appellant spent a "couple
of minutes" in that store. Connolly acknowledged that she did not actually know whether
appellant had been in the bar. Appellant then staggered to his vehicle and drove to a
nearby intersection. The police officer arrived and either she or Merrow, Connolly's friend,
pointed to appellant's vehicle that was stopped at a street light and told the officer, "That
truck, right there." Connolly stated the officer immediately left.

 On cross-examination, Connolly clarified that when the officer left, she observed the
police car follow appellant's vehicle. Connolly admitted that she did not give the officer any
personal information, such as her name, address, or phone number. Connolly explained
that Merrow informed her of the hearing. On re-direct examination, Connolly testified that
she wanted to call the police because appellant "was driving dangerously. He was barely
able to walk upright and was most decidedly not in any condition to be driving a giant chunk
of metal on the midday roads. He was a danger."

 Merrow testified that he was a police officer for "[j]ust under 32 years," and is now
retired. Merrow was having lunch with his friend, Connolly, when he heard the "screeching
of [appellant's] brakes." Merrow stated,

 I turned around and looked, and he was, like he was parked up at the, you
know, the little concrete stop there to keep you from coming in the window,
and I couldn't figure out why he slammed on his breaks [sic] at this point. 
And then he backed up and then parked in the center of the parking lot,
slamming on his brakes, again.


When appellant exited his vehicle, Merrow thought appellant seemed "distracted" and while
looking for something in his vehicle, "he kind of like tilted over to the side, hit the frame of
the car with his hip." Merrow told Connolly that appellant was drunk. According to Merrow,
appellant closed the door to his vehicle and began urinating. Appellant was not facing
Merrow and Connolly while he urinated.

 Merrow called 911 on his personal cell phone and informed the dispatcher that
"there was a DWI in the parking lot of Moody's Taco Place, and that he [appellant] had just
gone into the bar at Macaw's, and probably would be coming out fairly shortly afterwards." 
Merrow told the 911 operator that he believed that appellant was drunk because he had
urinated in the parking lot and because of his "lack of stability as he controlled himself." 
Merrow stated that when he called 911, he gave the dispatcher appellant's license plate
number, identified himself, and mentioned that he was a retired police officer. However,
he did not give his home address or phone number. According to Merrow, based on his
experience as a police officer, he knew that his phone number would appear when he
called 911 and that by identifying himself, the police would later be able to contact him.

 After Merrow called 911, appellant drove away in his vehicle, and the police officer
arrived in the parking lot. Merrow informed the police officer that "the DWI I had just called
in had just left the parking lot and he was out on Saratoga. And I pointed to the
gentleman's vehicle setting (sic) at the left turn light at Saratoga and Weber." According
to Merrow, the police officer understood which vehicle he pointed out because it was the
only vehicle matching the description he gave and it was the first car in line at the "turn
signal." Merrow observed that the police officer drove after appellant's vehicle and turned
on his "overhead lights." On cross-examination, Merrow stated that the prosecutor
acquired his name and phone number from the police department. On re-direct
examination, Merrow explained that urinating in a public place is illegal, and an "arrestable
offense."

 Officer Kless testified that while on patrol, he received a dispatch that an individual
was urinating on the side of a building. He did not recall whether dispatch told him the
license plate number of the vehicle that appellant was driving. Officer Kless went to the
shopping center in his marked police unit, and when he arrived in the parking lot, three
individuals approached him. Officer Kless stated,

 Well, the first thing they did was they directed my attention to a vehicle that
was at the intersection of Saratoga and Weber. And they said that that
individual had just urinated in public and was extremely intoxicated. . . .  After
they said that, just for the safety, I didn't have time to get their information,
or anything like that. I didn't want him driving any further if he was that
intoxicated. And I pulled in behind him and proceeded to stop him.


According to Officer Kless, he turned on his overhead lights, but appellant did not
immediately pull over and instead continued to drive into an apartment complex. Officer
Kless stated, "[appellant] kept on going through the entire apartment complex to the very
back, where he pulled into a parking space." Officer Kless believed that he followed
appellant with his overhead lights on for approximately a quarter of a mile and that there
were "many" safe spots appellant could have stopped. It concerned Officer Kless that
appellant did not immediately pull over. When appellant finally parked his car at the
apartment complex, Officer Kless observed that appellant was intoxicated. According to
Officer Kless, appellant had slurred speech, needed assistance to stand, had "glassy
bloodshot eyes," and smelled of an intoxicating beverage. Officer Kless administered an
HGN test and appellant showed six clues; Officer Kless asked appellant to perform several
other field sobriety tests, which appellant refused to do. Officer Kless arrested appellant.

 On cross-examination, Officer Kless stated that he did not know the people who
pointed out appellant's vehicle. He also clarified that when appellant turned into the
apartment complex, he drove "all the way to the back [of the parking lot] and a left, and
circled back around." Although appellant did not commit any traffic violations, Officer Kless
stated that he had already decided to stop appellant based on the information he acquired
from the people at the shopping center.

III. Denial of Motion to Suppress By his first issue, appellant contends that the trial court erred in denying his motion
to suppress. Specifically, appellant argues that police corroboration "that indicated criminal
activity was underway" was required because Officer Kless stopped appellant based on
information he acquired from "witnesses who were truly anonymous."

A. Applicable Law and Standard of Review

 A temporary detention by a police officer is lawful if the officer has a reasonable
suspicion to believe that an individual is violating the law. (5) "Reasonable suspicion exists
if the officer has specific, articulable facts that, when combined with rational inferences
from those facts, would lead him to reasonably conclude that a particular person actually
is, has been, or soon will be engaged in criminal activity." (6) When the appellant challenges
the reasonableness of a temporary detention, as in this case, we must determine whether
reasonable suspicion existed to make the stop based on the totality of the circumstances. (7)

 "A trial court's ruling on a motion to suppress, like any ruling on the admission of
evidence, is subject to review on appeal for abuse of discretion." (8) At a motion to suppress
hearing, the trial court is the sole judge of the credibility of the witnesses and the weight
given to their testimony. (9) We must give almost total deference to the trial court's rulings
on questions of historical fact. (10) However, we conduct a de novo review of the trial court's
application of law to facts not turning on credibility and demeanor. (11)

 We view the evidence in the light most favorable to the trial court's ruling when the
trial court did not file findings of fact. (12) We assume that the trial court made the implicit
findings of fact supporting its ruling if they are supported by the record. (13) We will uphold
the trial court's decision if it is correct on any theory of law applicable to the case. (14)

B. Discussion

 Appellant argues that Officer Kless did not have reasonable suspicion to make the
initial stop because (1) he did not personally observe any criminal activity, (2) Merrow and
Connolly were not reliable because they were anonymous, and (3) Officer Kless did not
corroborate Merrow's and Connolly's information. We disagree. (15)

 Officer Kless's suspicion that appellant had been or was engaged in criminal activity
was based on the information he received through the 911 dispatcher and two, perhaps
three, citizen eyewitnesses. Officer Kless was told in a face-to-face encounter that
appellant was intoxicated and had urinated in a public place. After confirming which
vehicle appellant was driving, Officer Kless immediately began following him and turned
on his overhead emergency lights. Appellant failed to stop when Officer Kless turned on
his lights, and instead drove for approximately a quarter of a mile to an apartment complex,
circled the parking lot, and parked his car.

 In Brother v. State, the Fort Worth Court of Appeals concluded that a police officer's
reasonable suspicion to make a stop does not have to be based on the officer's personal
observations and may instead be supplied by information acquired from another person's
tip bearing sufficient indicia of reliability. (16) The court of criminal appeals affirmed stating,
"To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe
suspects and wait until additional suspicious acts are committed, would be foolish and
contrary to the balance of interests struck in Terry and its progeny." (17) Moreover, an officer
may form his reasonable suspicion on facts supplied by a citizen eyewitness, which he
adequately corroborated. (18) Less corroboration is needed when the information's reliability
is increased. (19) "[C]orroboration refers to whether the police officer, in light of the
circumstances, confirms enough facts to reasonably conclude that the information given
to him is reliable and a temporary detention is thus justified." (20)

 Although a tip from an unknown informant standing alone will rarely support the
suspicion necessary to justify an investigative detention, a citizen who reports that a crime
is or has occurred, should be given greater weight than an anonymous phone call. (21) "It has
been widely recognized that the reliability of a citizen-informant is generally shown by the
very nature of the circumstances under which the incriminating information became known
to him or her." (22) 

 In this case, Officer Kless had sufficient information to warrant the investigative
detention of appellant. Neither Merrow nor Connolly were paid informants; they were
concerned citizens. Merrow and Connolly placed themselves in a position where they
could be held accountable for their intervention. (23) Merrow identified himself to the 911
dispatcher, reported appellant's license plate number, and the State was able to contact
him based on his call to 911. Merrow testified that based on his experience as a police
officer, his cell phone number would have appeared on the dispatcher's caller ID. Both
Merrow and Connolly made face-to-face contact with Officer Kless. (24) Merrow gave a
detailed description of the wrongdoing that he observed firsthand to Officer Kless. Merrow
informed Officer Kless that appellant appeared intoxicated and had just urinated in a public
place. Both Connolly and Merrow pointed out appellant's vehicle to Officer Kless, and he
testified that he immediately followed appellant's vehicle with his overhead emergency
lights turned on. (25) Appellant did not stop when Officer Kless turned on his overhead
lights. (26) Thus, because Merrow and Connolly placed themselves in a position where they
could have been easily identified and held responsible for their intervention, the information
they provided bore sufficient indicia of reliability to support a temporary investigative
detention. (27)

 We conclude that based on the totality of the circumstances reasonable suspicion
existed to make the stop. (28) Therefore, the trial court properly denied appellant's motion to
suppress. We overrule appellant's first issue.

IV. Hearsay Testimony at the Suppression Hearing

 By his second issue, appellant contends that pursuant to rule 801(d) of the rules of
evidence, the trial court erred by admitting inadmissible hearsay at the suppression
hearing. (29)

 However, because the rules of evidence, except with respect to privileges, do not
apply to suppression hearings, even assuming that the complained-of testimony was
hearsay, the trial court did not err by allowing it. (30) We overrule appellant's second issue.

V. Conclusion (31)

 We affirm.


 

 LINDA REYNA YAÑEZ,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 26th day of August, 2009.
1. See Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).
2. See id. § 49.09(b)(2) (Vernon Supp. 2008) (providing that an offense under section 49.04 of the
penal code is a third degree felony if the defendant has previously been convicted "two times of any other
offense relating to the operating of a motor vehicle while intoxicated"). In his judicial confession and
stipulation, appellant admitted that he had previously been convicted of driving while intoxicated two times.
3. On appeal, appellant does not contend that the officer lacked probable cause to arrest him.
4. The trial court certified that appellant had the right to appeal "matters [that] were raised by written
motion filed and ruled on before trial and not withdrawn or waived." See Tex. Code Crim. Proc. Ann. § 44.02
(Vernon 2006).
5. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing Balentine v. State, 71 S.W.3d
763, 768 (Tex. Crim. App. 2002)).
6. Id. (citing Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).
7. Id. at 492-93.
8. Amador v. State, 275 S.W.3d 872, 878 (Tex. Crim. App. 2008).
9. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).
10. Ford, 158 S.W.3d at 493; Ross, 32 S.W.3d at 856 (citing Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 88 n.3 & 90-91 (Tex. Crim. App. 1997)).
11. Ford, 158 S.W.3d at 492 (citing Guzman, 955 S.W.2d at 88-89).
12. Id. at 493.
13. Ross, 32 S.W.3d at 855 (citing Carmouche, 10 S.W.3d at 328; Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990)).
14. Amador, 275 S.W.3d at 878-79; Ross, 32 S.W.3d at 855.
15. See Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) ("The factual basis for stopping
a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired
from another person."); see also Marquez v. State, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987) (en banc)
(providing that information provided by an identified citizen eyewitness is presumed to be reliable when
included in an affidavit supporting a search warrant); Adams v. Williams, 407 U.S. 143, 147 (1972) (concluding
that if an informant has an indicia of credibility or reliability, an officer is not required to have personally
observed the crime).
16. Brother v. State, 85 S.W.3d 377, 380-81 (Tex. App.-Fort Worth 2002), aff'd, 166 S.W.3d 255 (Tex.
Crim. App. 2005).
17. Brother, 166 S.W.3d at 259.
18. Id.
19. Brother, 85 S.W.3d at 381.
20. Brother, 166 S.W.3d at 259 n.5.
21. See State v. Garcia, 25 S.W.3d 908, 912-13 (Tex. App.-Houston [14th Dist.] 2000, no pet.)
(commenting that the reliability of the information from an individual who presents himself to an officer in
person and whose identity might easily be traced is increased); State v. Sailo, 910 S.W.2d 184, 188 (Tex.
App.-Fort Worth 1995, pet. ref'd) (explaining that "information from a citizen who confronts an officer in person
to advise the officer that a designated individual present on the scene is committing a specific crime should
be given serious attention and great weight by the officer").
22. Brother, 166 S.W.3d at 258.
23. See Hawes v. State, 125 S.W.3d 535, 540 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (concluding
that the informant was not a "truly anonymous informer" because he placed "himself in a position where he
could be held accountable for his intervention") (citing State v. Fudge, 42 S.W.3d 226, 232 (Tex. App.-Austin
2001, no pet.)); see also Gansky v. State, 180 S.W.3d 240, 247 (Tex. App.-Fort Worth 2005, pet. ref'd)
(concluding that although the informants were unknown to the officer, at least one informant stopped "which
would have at least made him identifiable had [the officer] stopped to get his identification").
24. See Gansky, 180 S.W.3d at 247 ("Unsolicited information concerning a crime in progress provided
to police in a face-to-face encounter by a concerned citizen who is not connected with police and is not a paid
informant is inherently reliable."); see also Giles v. State, 13-06-570-CR, 2007 Tex. App. LEXIS 6757 at *14-15 (Tex. App.-Corpus Christi Aug. 23, 2007, no pet.) (mem. op., not designated for publication) (concluding
that "unsolicited information concerning a crime in progress provided to the police by a concerned citizen is
inherently reliable").
25. See, e.g., Ramirez v. State, 658 S.W.2d 808, 810 (Tex. App.-Corpus Christi 1983), aff'd, 672
S.W.2d 480 (Tex. Crim. App. 1984) ("[P]robable cause requirements for warrantless searches have been met
where officers acted immediately upon information furnished to them by witnesses to a crime without having
to first investigate the reliability and credibility of those witnesses.").
26. See Guzman, 955 S.W.2d at 90 ("[A]voiding officers is a factor to consider when determining
probable cause.").
27. See Brother, 85 S.W.3d at 380-81; see also Giles, 2007 Tex. App. LEXIS 6757, at **14-15; Gansky,
180 S.W.3d at 247; Hawes, 125 S.W.3d at 540.
28. See Ford, 158 S.W.3d at 492-93.
29. See Tex. R. Evid. 801(d).
30. See Granados v. State, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (stating that, with the exception
of rules governing privileges, the rules of evidence do not apply to suppression hearings); Turner v. State, 132
S.W.3d 504, 508 (Tex. App-Houston [1st Dist.] 2004, pet. ref'd) (concluding that the "trial court did not err in
admitting [the alleged hearsay] statements because the rules of evidence did not apply to appellant's
hearing"); see also Tex. R. Evid. 104 (stating that "preliminary questions concerning . . . the admissibility of
evidence shall be determined by the court . . . . In making its determination the court is not bound by the rules
of evidence except those with respect to privileges").
31. We note that the trial court conducted a hearing and found appellant indigent. Subsequently, the
clerk's record and the reporter's record were filed with this Court. Therefore, appellant's motion, carried with
the case on March 6, 2008, requesting a free clerk's record and a free reporter's record is denied as moot.