John David MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–09–00204–CR, 04–09–00205–CR.

Court of Appeals of Texas, San Antonio.

Dec. 16, 2009.

Opinion Dissenting from Denial of Rehearing En Banc June 23, 2010.

Julie Balovich, Texas RioGrande Legal Aid, Inc. (Regional Public Defender's Office), Assistant Public Defender, Del Rio, TX, for Appellant.

Ana Markowski Smith, County Attorney, Fred Hernandez, Dist. Atty., Del Rio, TX, Carter Winters, Attorney at Law, San Antonio, TX, for Appellee.

Sitting: CATHERINE STONE, Chief Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by: STEVEN C. HILBIG, Justice.

John David Martinez was charged with driving while intoxicated and possession of marijuana. Martinez filed a motion to suppress, alleging the police officer did not have reasonable suspicion for the initial stop of his vehicle. After a hearing, the trial court denied the motion to suppress. Martinez subsequently entered a plea of guilty pursuant to a plea bargain, which the court followed. Martinez appeals, complaining the trial court erred in denying his motion to suppress. We affirm.

### BACKGROUND

Officer Paul Hurley of the Del Rio Police Department was on routine patrol on a Sunday night. At 10:55 p.m., Officer Hurley heard the police dispatcher report that a "passerby" had called to state that a blue Ford truck had stopped at 17th and North Main Streets and a male put some bicycles in the back of the truck. The report also indicated the truck left driving westbound. Officer Hurley drove to the general area mentioned in the dispatch and observed a man in a Ford F–250 truck that appeared to be blue. The vehicle was coming from the general area reported by the dispatcher. The officer did not notice any other vehicle in the area. Officer Hurley followed the truck for approximately four blocks and decided to stop the vehicle. The stop took place approximately seven minutes after he first heard the report from the dispatcher. The location was approximately one-half to three-fourths of a mile from where the bicycles were reportedly taken.

As he walked to the driver's side of the truck, Officer Hurley noticed two bicycles in the open truck bed. He then detected a strong odor of alcohol and noticed Martinez had bloodshot, glassy eyes. Martinez got out of the truck and Officer Hurley saw him holding on to the side of the truck to steady his balance. Officer Hurley told Martinez that he had stopped him because his truck matched the description of the vehicle involved in a possible theft. A few minutes after the stop, Officer Hurley asked the dispatcher if a victim had been located. The officer thereafter requested the dispatcher to send the caller to the scene of the stop. At some point,

Officer Gee, who was originally dispatched to investigate the taking of the bicycles,[1] also arrived at the scene. The informant drove up soon thereafter and confirmed that Officer Hurley had stopped the correct vehicle. The record does not indicate the name of the informant, but Officer Hurley testified the citizen did not have any relationship to the Del Rio Police department.

Based on his observations, Officer Hurley asked Martinez to perform several field sobriety tests, and he placed Martinez under arrest for DWI. As a result of the arrest for DWI, Officer Hurley obtained evidence to charge Martinez with possession of under two ounces of marihuana.

## STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). We view the record in the light most favorable to the trial court's ruling and will reverse only if the ruling is outside the zone of reasonable disagreement. *Id.* We give almost total deference to the trial court's determination of historical facts, especially those based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We review de novo the trial court's application of the law of search and seizure to the facts. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex.Crim.App.2007). We will sustain the trial court's ruling "if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Dixon*, 206 S.W.3d at 590.

## APPLICABLE LAW

An officer must possess reasonable suspicion to initiate an investigative stop. *Davis v. State*, 947 S.W.2d 240, 244–45 (Tex.Crim.App.1997). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim.App.2005). "Under this standard, the articulable facts on which the officer relied need only support a reasonable belief that activity out of the ordinary is occurring or has occurred, that the detainee is connected to the unusual activity, and that the unusual activity is related to crime." *State v. Garcia*, 25 S.W.3d 908, 912 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Reasonable suspicion is dependent upon both the content of the information possessed by police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 329–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Gansky v. State*, 180 S.W.3d 240, 244–45 (Tex.App.-Fort Worth 2005, pet. ref'd).

An anonymous tip standing alone will rarely supply police with reasonable suspicion. *See Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). However, such a tip coupled with observations by police may ultimately present reasonable suspicion. *See, e.g., Alabama*, 496 U.S. at 331, 110 S.Ct. 2412; *Bilyeu v. State*, 136 S.W.3d 691, 695–96 (Tex.App.-Texarkana 2004, no pet.). "An officer's prior knowledge, his experience, and his corroboration of the details of a tip may be considered in giving the anonymous tip the weight it deserves." *Davis v. State*, 989 S.W.2d 859, 864 (Tex.App.-Aus-

---

1. The record does not indicate if any charges were ever filed in connection with the taking of the bicycles.

tin 1999, pet. ref'd). Corroboration means, in light of the circumstances, the police officer confirms enough facts so that he may reasonably conclude that the information provided is reliable and a detention is justified. *Alabama*, 496 U.S. at 329–31, 110 S.Ct. 2412; *Brother v. State*, 166 S.W.3d 255, 259 n. 5 (Tex.Crim.App.2005), *cert. denied*, 546 U.S. 1150, 126 S.Ct. 1172, 163 L.Ed.2d 1129 (2006); *State v. Nelson*, 228 S.W.3d 899, 903 (Tex.App.-Austin 2007, no pet.).

▆▆▆▆ A tipster is no longer considered anonymous when he presents himself to police and can be held accountable for the information he provided. *See, e.g. Garcia*, 25 S.W.3d at 913; *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995, pet. ref'd.). "Unsolicited information regarding a crime in progress provided by a citizen who has no relationship with the police and who makes herself accountable by providing contact information is inherently reliable." *Nelson*, 228 S.W.3d at 903.

### DISCUSSION

▆▆▆▆ Martinez argues the stop was not supported by reasonable suspicion because the information was reported by an anonymous tipster, the bicycles in question were never reported stolen and the stop was based solely on the color of the vehicle. First, Martinez misconstrues the nature of the informant. Although the name of the citizen tipster does not appear in the record, the dispatcher apparently maintained contact with the caller throughout the stop as the dispatcher was able to direct the caller to the scene to identify the truck. Under similar circumstances, other courts have concluded the tipster is entitled to more reliability than that of a true anonymous caller. *See, e.g., Reesing v. State*, 140 S.W.3d 732, 737 (Tex.App.-Austin 2004, pet. ref'd) (holding 911 caller's reliability demonstrated by identifying

himself, remaining on phone while police effected stop, followed the suspect's vehicle, and waited at scene to give statement to police); *Hawes v. State*, 125 S.W.3d 535, 540 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding tow truck driver that relayed information to police about defendant's erratic driving as he followed defendant's vehicle entitled to greater reliability than anonymous tipster because informant "plac[ed] himself in a position where he could be held accountable for his intervention"); *Sailo*, 910 S.W.2d at 188 (holding anonymous citizen who stopped to tell police defendant was driving erratically was considered more reliable than anonymous tipster where citizen followed police instructions to pull to the side of the road even though he drove away before officers could obtain identifying information). Accordingly, we view the information provided by the caller as coming from a reliable person rather than a mere anonymous tipster.

Martinez also argues the information provided by the tipster does not amount to reasonable suspicion because the State failed to show that a crime had occurred. Reasonable suspicion does not turn on the occurrence of an actual crime, only that the reported activity is "out of the ordinary," and is related to crime. *Garcia*, 25 S.W.3d at 912. Officer Hurley, an officer with eleven years experience, testified it was "suspicious" for someone to stop his truck at 11:00 p.m. and place two bicycles in the bed of the truck. Although no complainant had been identified at the time of the stop, Officer Hurley considered the call to be reporting a theft. Under the totality of the circumstances, the reported activity was sufficiently related to criminal activity.

Finally, Martinez argues the stop was unreasonable because it was based solely on the color of his vehicle and the officer

failed to corroborate any information provided by the tipster. This argument ignores much of the evidence. Officer Hurley testified he stopped the vehicle because it was coming from the area where the activity had been reported; the vehicle was the same type of truck as that reported and was an "approximate" color match; he did not see any other vehicles in the area; and he stopped the truck in less than seven minutes from when he heard the report from the dispatcher.

The totality of the circumstances, including the reliability of the caller, Officer Hurley's eleven years of experience, and the corroboration of the information provided by the caller, provided reasonable suspicion for the investigative stop. The trial court did not abuse its discretion in denying the motion to suppress.

## CONCLUSION

The trial court's judgments are affirmed.

REBECCA SIMMONS, Justice, dissenting to denial of en banc consideration.

The court's opinion in this case expands the current case law relating to an investigative stop by a police officer. Never has this court upheld an investigative stop based on such a paucity of facts. Even the characterization of the anonymous informant as a citizen informant does not provide the necessary reliability to render this stop valid. As a matter of law, the totality of the circumstances did not provide reasonable suspicion for the investigative stop of Martinez. Because I also believe the opinion conflicts with this court's prior opinion in *State v. Simmang*, 945 S.W.2d 219 (Tex.App.-San Antonio 1997, no pet.), I respectfully dissent to the denial of the motion for rehearing en banc. *See* Tex. R.App. Proc. 41.2(c) (favoring en banc re-

view when necessary to "maintain uniformity of the court's decisions").

As noted by the court, when reviewing a trial court's decision on a motion to suppress, a bifurcated standard of review is applied. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App.2007). In this case, however, the facts are undisputed. The issue presented is a legal question: whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion. *Madden v. State*, 242 S.W.3d 504, 517 (Tex.Crim.App.2007). The burden was on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App.2005); *State v. Grifey*, 241 S.W.3d 700, 703 (Tex. App.-Austin 2008, pet.ref'd).

Only one witness, Officer Hurley, testified at the suppression hearing. To support the stop in this case, Officer Hurley had to point to "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaging in criminal activity." *Ford*, 158 S.W.3d at 492; *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001). These facts must amount to "more than mere hunch or suspicion." *Brother v. State*, 166 S.W.3d 255, 277 (Tex.Crim.App. 2005). Importantly in this case, "[w]e look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up." *State v. Grifey*, 241 S.W.3d at 704 (citing *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). With these precepts

in mind, we turn to the record and the testimony of Officer Hurley.

Officer Hurley testified that dispatch put out a call that a vehicle had stopped and "someone supposedly put some bicycles in the back of a pickup truck in a general area of town."[1] When asked how dispatch received the information, Officer Hurley stated "from the anonymous caller." The only identification provided by the dispatcher was that the person who called in was "simply a passerby."[2] No further information was provided about the passerby, and Officer Hurley admitted that "all I got [from dispatch] was a vehicle description and a male driving the vehicle." The vehicle description was merely a blue Ford truck. Immediately before Officer Hurley made the stop, he pulled up behind Martinez and asked dispatch for any additional identification for the vehicle. Importantly, dispatch repeated twice that the pickup was blue in color. Officer Hurley then stopped Martinez even though he was driving a **green** Ford truck and no bicycles were visible in the back of the truck. Officer Hurley testified that he made the stop because the vehicle came from the general area where the activity was reported, and it was a Ford pickup driven by a male.[3] He personally saw no illegal activity. Surprisingly, this court concludes Officer Hurley had reasonable suspicion to stop Martinez based on the reliability of the unnamed informant. As shown below, the unnamed informant does not provide any additional support for this stop.

The case law is clear, an anonymous tip, standing alone, seldom provides the reasonable suspicion necessary to authorize an investigative stop and detention. *J.L.* 529 U.S. at 269, 120 S.Ct. 1375; *Hall v. State,* 74 S.W.3d 521, 525 (Tex.App.-Amarillo 2002, no pet.) (citing *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)); *Davis v. State,* 989 S.W.2d 859, 863 (Tex.App.-Austin 199, pet. ref'd). This is because there is no way to evaluate the reliability of the information provided by the source. *Juarez v. State,* No. 04-09-00411-CR, 2010 WL 374399, at *2 (Tex.App.-San Antonio Feb 03, 2010, no pet. h.) (citing *Brother v. State,* 166 S.W.3d 255, 259 n. 5 (Tex.Crim. App.2005)); *Hall,* 74 S.W.3d at 525. "Consequently, there must be some further indicia or corroboration from which a police officer may reasonably conclude that the tip is reliable and a detention is justified."[4] *Hall,* 74 S.W.3d at 525 (citing *Garcia v. State,* 3 S.W.3d 227, 235 (Tex.App.-Houston [14th Dist.] 1999, no pet.)); *see also Waller v. State,* No. 05-09-00097-CR, 2009 WL 4642850, at *1 (Tex.App.-Dallas Dec.9, 2009, no pet.) (holding corroboration insufficient). Notably, "[t]he corroboration of details that do not indicate criminal activity will not provide support for the anonymous tip." *See Johnson v. State,* 146 S.W.3d 719, 721 (Tex.App.-Texarkana 2004, no pet.); *Stewart v. State,* 22 S.W.3d 646, 648 (Tex.App.-Austin 2000, pet. ref'd). The Supreme Court confirmed in the leading case of *Florida v. J.L* that:

---

1. At the hearing, Officer Hurley identified on a map the location of the stop which was some fifteen blocks from where the incident allegedly occurred.

2. Nowhere in the record is the passerby identified by name.

3. Curiously, Officer Hurley testified he would have pulled over a Ford pickup even if it had

been driven by a woman. Apparently Officer Hurley did not give much credence to the passerby's information.

4. The tip must be corroborated not only as to the identity of the individual sought to be accused, but also as to the improper nature of his conduct. *Hall v. State,* 74 S.W.3d 521, 525 (Tex.App.-Amarillo 2002, no pet.).

An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, *not just in its tendency to identify a determinate person.*

*J.L.,* 529 U.S. at 272, 120 S.Ct. 1375 (emphasis added).

Based on the record in this case and the paucity of any corroboration, it is clear that the stop is unsupportable because it was based on an anonymous tip.[5] *See Davis,* 989 S.W.2d at 865. Perhaps that is why the court goes to extraordinary lengths to convert what the State, defense, and trial court referred to at the suppression hearing as an anonymous tip into a reliable tip by a citizen informant.[6] However, even this characterization cannot provide what the record lacks.

## A. Informant's Tip

It is undisputed that, when he made the stop, Officer Hurley did not know the caller was anything other than an "anonymous passerby." The dispatcher did not testify and there is no evidence that the caller gave his or her name, stayed on the line, or provided any information to the dispatcher other than the fact that a male in a blue Ford truck picked up two bikes from a certain location and drove away. No evidence exists in the record that any co-operating officer or even the dispatcher knew any additional facts other than those testified to by Officer Hurley. There is evidence that after the stop Officer Hurley asked dispatch if there were any complainants or victims and dispatch replied no, only the passerby. Officer Hurley then asked dispatch to send the passerby to the stop, and the passerby subsequently arrived. From these facts the court concludes: "the dispatcher apparently maintained contact with the caller throughout the stop as the dispatcher was able to direct the caller to the scene to identify the truck." It is this unfounded surmise that permits the court to rely on authority pertaining to citizen informants who stay on the line with police providing added corroboration and details not present in this case. *See Reesing v. State,* 140 S.W.3d 732, 737 (Tex.App.-Austin 2004, pet. ref'd) (caller stayed on line and police knew caller on line before the stop); *Hawes v. State,* 125 S.W.3d 535, 540 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (tow truck driver relayed information to police as he followed driver before stop).

This court's reasoning relating to the informant fails for two reasons. First, there is no evidence in the record that the caller remained on the line with dispatch while the stop was made. It is just as likely that the dispatcher obtained the caller's number from caller identification. We just don't know. Second, even if the dispatcher remained on the line with the caller, Officer Hurley did not know that fact before he effectuated the stop and thus, it cannot form the basis of his reasonable suspicion. *Hawes,* 125 S.W.3d at 538 (cit-

---

5. The parties consistently refer to the informant as an anonymous caller in their briefs before this court.

6. If the informant puts himself in a position to be easily identified and held accountable for his intervention then the reliability of the tip may be greater than that of an anonymous tipster. *See Mitchell v. State,* 187 S.W.3d 113, 117 (Tex.App.-Waco 2006, pet. ref'd); *Pipkin v. State,* 114 S.W.3d 649, 655 (Tex.App.-Fort Worth 2003, no pet.)

ing *Davis v. State,* 947 S.W.2d 240, 242–44 (Tex.Crim.App.1997) (in determining whether reasonable suspicion exists, one must look to the facts available to the officer at the moment of detention)). The cases the court relies upon to bolster the reliability of the informant are distinguishable because in those cases the officer knew the informant was on the line or the citizen informant spoke directly to the officer.[7]

In *Reesing v. State,* Hankins, a citizen informant, reported to police that he had personally spoken to the appellant and the appellant was intoxicated and driving. *Reesing,* 140 S.W.3d at 734. This information was relayed to Officer Simpson who made the stop. *Id.* at 734–35. The court noted: "Simpson was regularly updated regarding appellant's activities: 'They were continuously giving information. The person who called was still on their cell phone the whole time, they never hung up.' " *Id.* at 735. The court held that given the detailed information known to the officer, it was not unreasonable for the officer to rely on the information from the citizen. *Id.* at 737.

Likewise, in *Hawes v. State,* the witness tow truck driver, Clevenger, radioed his dispatcher and told him of Hawes' erratic driving. *Hawes,* 125 S.W.3d at 537. A police dispatcher sent Officer Cargile in pursuit and gave him information about the vehicle, its location, and the wrecker driver who was still following the vehicle.

*Id.* The court held that the police officer could consider Clavenger's information reliable because he was driving a tow truck through which his identity could be easily traced, and the officer saw him following the suspect. *Id.* at 540. In *State v. Salio,* 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995, pet. ref'd), the informant personally spoke to the officer and told him that he had seen a pickup truck driving erratically. He specifically described the truck and its driver to the officer. *Id.* The court gave greater reliability to the citizen informant because he confronted the officer in person with details of his observation. *Id.*

In this case Officer Hurley was required to provide articulable facts that would allow this court to determine the circumstances upon which Hurley could reasonably conclude that Martinez actually had been engaged in criminal activity. *See Ford,* 158 S.W.3d at 492. The articulable facts the court references are:

1. The vehicle was coming from an area where the activity had been reported;[8]

2. The vehicle was a blue Ford pickup;[9]

3. Officer Hurley did not see any other vehicles in the area;[10] and

4. Officer Hurley stopped the truck within seven minutes from when he heard the call from dispatch;[11]

A review of pertinent case law reveals that such scant facts will not support a detention.

7. This is not a case where a stop was made based on facts observed by another officer or solely at the request of another officer, in which case the focus would lie on the information known to the officer who made the request. *See State v. Jennings,* 958 S.W.2d 930, 933 n. 2 (Tex.App.-Amarillo 1997, no pet.).

8. As reflected by the marked map, the area encompasses over fifteen city blocks.

9. Officer Hurley stopped a green Ford pickup.

10. Officer Hurley testified there were some vehicles out Sunday night, just not the same amount of traffic as earlier in the evening. The video in evidence reflects that other vehicles were in the area.

11. There is no evidence in the record of when dispatch received the call from the passerby.

In *Florida v. J.L.*, the police were informed by an anonymous tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *J.L.*, 529 U.S. at 268, 120 S.Ct. 1375. The police went to the stop and saw three black youths, one of whom was wearing a plaid shirt. The officers frisked J.L. and found a gun. *Id.* The Supreme Court rejected Florida's argument that because J.L. was at the bus stop and wearing a plaid shirt the officers had reasonable suspicion for the detention. *Id.* at 271–72. The stop in this case was supported by far less. By analogy, it would be as if J.L.were stopped ten blocks from the bus stop wearing a black t-shirt. Martinez was driving a green pickup and was found approximately fifteen blocks from the incident. Like the concealed gun, the bikes in Martinez' pickup were not apparent to Officer Hurley prior to the detention.

*Davis v. State* has many similarities to this case in that it originated from an unidentified caller who claimed a black Chevy Blazer with dealer tags 5D1180 was traveling in the area of mile post 259 on I–35 in a reckless manner. *Davis*, 989 S.W.2d at 861. The caller described three occupants "possibly smoking marijuana." *Id.* Officer Stengle stopped the Chevy Blazer at mile post 263 on I–35. *Id.* As in this case, Officer Stengle acknowledged that he stopped the Blazer solely based on the anonymous caller. *Id.* The court held the specific identity of the vehicle, its location, and its occupants were insufficient to furnish reasonable suspicion. *Id.* at 864. As in this case, "[t]here was nothing to link the occupants to the criminal activity reported." *Id.* at 865.

Likewise, *Waller v. State* involved a tip from a concerned citizen that was insufficient to support a stop. *Waller*, 2009 WL 4642850, at *1. Officer Kelly was on patrol when dispatch advised him that a con-cerned citizen had called to report a possible intoxicated driver. *Id.* The caller had given a description of a gray passenger car and a general location. *Id.* No other facts were provided. The court noted that although dispatch had the caller's name and telephone number, the officer never contacted the caller for more information. *Id.* Officer Kelly stopped a car matching the general description. *Id.* The court held, however, that based on the vagueness of the tip and Officer Kelly's admission that he did not corroborate the caller's suspicion, Officer Kelly lacked reasonable suspicion for the stop. *Id.*

*Stewart v. State*, 22 S.W.3d at 648, also involved an illegal detention based on a caller who described an individual at a convenience store who was falling down at the gas pumps and looked intoxicated. The caller stated that it appeared the individual was going to drive a green Camaro. *Id.* An officer saw a green Camaro leaving the gas station and stopped the vehicle. *Id.* The court held the corroboration of the caller's information of a green Camaro occupied by two individuals did not give the officer any basis for crediting the informer's accusation that the driver of the Camaro was intoxicated. *Id.* at 649. "Indeed given the generality of the radioed description, it is not clear that the officer could even be sure that the automobile was being driven by the man seen to fall by the informer." *Id.*

The foregoing cases establish that an unidentified caller providing a general location together with a general description of the vehicle and occupant will not suffice to provide reasonable suspicion for a stop. This court recognized that more was needed in *State v. Simmang*, 945 S.W.2d at 224.

**B. STATE V. SIMMANG**

In *Simmang*, the dispatcher received a call from an anonymous person claiming

that a lone white male was committing a sexual offense in a "gold-colored four door sedan" in a parking lot at a particular intersection. *Id.* at 220. Similar to this case, the officer in *Simmang* did not talk to the informant, or know the identity, reliability, or source of the informant's knowledge prior to the stop. *Id.* The officer went to the parking lot, saw a gold-colored four door sedan and detained the driver. *Id.* at 220–21.

In holding the detention was unlawful, the court in *Simmang* noted the tip did not give any "description of the offending individual as to age, physical appearance, or clothing." *Id.* at 224. The description of "white male" in *Simmang* "would fit a large segment of the population." *Id.* Further, the court took issue with the officer's testimony that he "did not see any other gold-colored cars," noting that "[a]n individual in an automobile is highly mobile." *Id.* The court noted the license plate number and model of car—which would more specifically identify the perpetrator—was lacking. *Id.* Because Simmang was "detained on the basis of the unsubstantiated suspicions of an anonymous caller of an unknown reliability and without specific and articulable facts to justify the stop," the court held the totality of the circumstances created an unlawful detention and upheld the suppression of evidence. *Id.*

This case presents far fewer facts to support a stop than *Simmang.* Here the description of a "male" driver fits an even larger population base. In *Simmang,* the police found the vehicle in the parking lot where the tipster said the offense was occurring. Here the green truck was merely coming from the general area, not even on the same street, some fifteen blocks away from the location of the alleged offense.[12] The inconsistency in approach between *Simmang* and this case is glaring.

### CONCLUSION

Because I believe the panel's opinion conflicts with this court's prior holding in *Simmang,* and because the opinion misconstrues current case law regarding anonymous tips and the requisite corroboration, I believe en banc consideration is warranted. *See Simmang,* 945 S.W.2d at 220; TEX.R.APP. PROC. 41.2(c). I, therefore, respectfully dissent to the denial of the motion for rehearing en banc.

Opinion Dissenting to Denial of En Banc Consideration by REBECCA SIMMONS, Justice joined by CATHERINE STONE, Chief Justice.

---

12. Like *Simmang,* the dispatcher did not identify when the tipster called in the tip.