NO. 07-01-0308-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 8, 2002
_____

SHAWN O'BRIEN HALL,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE COUNTY COURT AT LAW OF WALLER COUNTY;

NO. CC00-529; HON. JUNE JACKSON, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, J.J.

Appellant, Shawn O'Brien Hall, appealed his conviction for driving while intoxicated. The three points of error he asserted concern the trial court's refusal to 1) submit a jury instruction addressing the validity of the initial stop conducted by the police officers, 2) suppress evidence obtained via an allegedly illegal stop, and (3) grant a directed verdict once the supposedly inadmissible evidence is suppressed. We need only consider the second for it is dispositive, and, upon considering it, we reverse the judgment and remand the cause.

## *Background*

On September 9, 2000, an anonymous individual called the Waller County Sheriff's Department stating that he or she had seen a red pickup truck traveling southbound in the northbound lane of Highway 6.[1] The sheriff's dispatcher broadcast the information to Troopers Ann Gormly (Gormly) and Wilton White, Jr. (White) of the Texas Department of Public Safety. Again, the caller's identity was unknown, as was the location of the caller when the anonymous tip was made or the reliability of the tipster, according to the troopers. Furthermore, the record fails to disclose when the person made the call or the amount of time that lapsed between the time of the call and the broadcast by the dispatcher. Nevertheless, the two troopers proceeded to Highway 6 to investigate.

Approximately three to five minutes after receiving the dispatch, the troopers saw a red pickup truck backing out of or turning around in the driveway of a local car dealership located adjacent to the highway. The business was closed, given that the time was 2:30 a.m. After exiting, the red truck then "turned around, pulled back out on [Highway] 6 and . . . proceeded toward Highway 290 eastbound, got on the ramp and got on 290," according to a trooper. After the truck had driven about half a mile, the troopers engaged their emergency lights, stopped the vehicle, questioned the driver, *i.e.,* appellant, and administered to him various field sobriety tests, which he purportedly failed. Appellant was then arrested, charged with, and convicted of driving while intoxicated.

---

[1] Absent from the record is any evidence that the anonymous tipster imparted the license of the vehicle supposedly traveling in the improper direction, the number of occupants therein, the year or make of the truck, or any other information describing the vehicle involved, save for the comment about it being small and red.

That the officers did not know the direction from which appellant came before entering the dealership's driveway was undisputed. Similarly undisputed was that neither peace officer saw appellant commit any traffic offense or drive erratically. Nor did they testify that they saw appellant doing anything other than back out of the driveway before deciding to stop him. So, the record did and does not disclose the length of time appellant spent at the lot or the reason why he was there (other than to turn around or back out). Gormly also admitted that though she was able to see for approximately two miles at the time, she did not see appellant traveling in the wrong direction.

Next, when questioned about the reasons for the stop, both troopers said that the identity between the description of the vehicle in the anonymous tip and that driven by appellant and the time frame caused them to act. To this, Gormly added that seeing appellant turn his truck around in the driveway of a closed business at 2:30 a.m. further aroused her "suspicion." Yet, White, the more experienced trooper who was acting as Gormly's field training officer at the time, candidly represented that it was not unusual to see cars turning around in the particular driveway at that hour. And, again, both peace officers conceded that neither had seen appellant commit any traffic offense, drive erratically, or violate any law prior to stopping him.[2] So too did they admit that but for the broadcast from the dispatcher 1) they would have had no reason to stop appellant or 2) nothing would have "peaked" their interest in the vehicle. In short, the sole basis for the stop was the anonymous tip.

---

[2]One officer (Gormly) did opine that appellant drove "slow, under the speed limit" when attempting to access Highway 290. Yet, when questioned, she admitted that she could not estimate his purported speed. Nor did she say that such evinced the involvement of criminal activity in any way.

### *Point Two -- Refusal to Suppress Evidence*

Through his second point, appellant contended that the stop was illegal and, therefore, the trial court was obligated to suppress all evidence obtained as a result of it.[3] We agree with the contention.

*Standard of Review*

The applicable standard of review is described in *State v. Wallett*, 31 S.W.3d 329 (Tex. App.--Amarillo 2000, no pet.). We cite the litigants to that case.

Next, a law enforcement officer need not have probable cause to stop an individual. He need only have reasonable suspicion that criminal activity is afoot. *Held v. State,* 948 S.W.2d 45, 51 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). This enables him to temporarily detain (for investigatory purposes) those engaged in the activities creating the reasonable suspicion. Furthermore, reasonable suspicion exists when the officer has specific articulable facts which, when combined with rational inferences therefrom, would allow him to reasonably suspect that a particular person has engaged, or is or soon will be engaging, in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Thus, the totality of the circumstances must be perused.

Next, when the circumstances implicate an anonymous tip, caution must be taken. This is so because the tip, standing alone, seldom provides the reasonable suspicion necessary to authorize an investigative stop and detention. *Alabama v. White*, 496 U.S.

---

[3]Appellant raised the issue below via an oral motion to suppress urged immediately before trial commenced, a request for a jury instruction regarding the validity of the stop and the jurors' inability to consider tainted evidence, and a motion for directed verdict. Furthermore, in each instance, appellant founded his contention upon the validity of the stop. Thus, it is clear that the question before us was first presented to the trial court as required by Texas Rule of Appellate Procedure 33.1.

325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In other words, "a police officer generally cannot rely alone on a police broadcast of an anonymous phone call to establish reasonable suspicion." *Garcia v. State*, 3 S.W.3d 227, 234-35 (Tex. App.–Houston [14th] 1999, no pet.); *see Stewart v. State*, 22 S.W.3d 646, 648-50 (Tex. App.–Austin 2000, pet. ref'd) (holding that an uncorroborated caller's tip did not create reasonable suspicion); *Davis v. State*, 989 S.W.2d 859, 862-65 (Tex. App.–Austin 1999, pet. ref'd) (holding the same). This is so because the court has no way of evaluating the reliability of the information provided by the anonymous source. *Garcia v. State*, 3 S.W.3d at 35. Consequently, there must be some further indicia from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Id.*; *accord Dowler v. State*, 44 S.W.3d 666, 669-70 (Tex. App.–Austin 2001, pet. ref'd). That indicia may come in the form of an officer's prior knowledge and experience and his corroboration of the details of the tip. *Dowler v. State*, 44 S.W.3d at 670; *Stewart v. State*, 22 S.W.3d at 648; *Garcia v. State*, 3 S.W.3d at 235. Regarding the latter, the tip must be corroborated not only as to the identity of the individual sought to be accused but also as to the improper nature of his conduct. *See Dowler v. State*, 44 S.W.3d at 670 (holding that while an accurate description of the subject's readily available location and appearance will help the police correctly identify the person whom the tipster means to accuse, it does not show that the tipster has knowledge of concealed criminal activity); *Stewart v. State*, 22 S.W.3d at 648 (holding that the corroboration of details that are easily obtainable at the time of the tip and which do not indicate criminal activity will not lend support to the tip).

*Application of Standard*

As previously mentioned, the anonymous tip served as the basis of the stop at bar. Each trooper admitted that; neither saw appellant do anything wrong. And, to the extent the troopers found on Highway 6 a vehicle driven by appellant that matched the rather broad and general description of the truck described by the tipster, those indicia at best serve only to corroborate that appellant was the subject of the tip. They do not illustrate that he engaged or was engaging in misconduct. Instead, effort was made to corroborate the latter aspect of the tip through allusion to the time of night, appellant's turning around in the dealership's driveway, and then driving away at an indeterminable yet lawful speed. Yet, these indicia also fall short of their intended mark.

Simply put, lawfully turning around on a public thoroughfare or exiting a private driveway late at night and then driving away at some lawful speed does not reasonably suggest that appellant previously drove down the road in an illegal manner. Nor does it suggest that appellant was engaging or about to engage in criminal activity.[4] Again, the troopers conceded as much when they acknowledged that they personally saw appellant do nothing wrong and that nothing he did would have "peaked" their interest in his conduct had they not heard the tip.

We do not have before us evidence that the locale in question was a high crime area, that appellant stopped at the business for any more than an incidental amount of

[4]The record discloses that at some point in time, Highway 6 went from a two lane road to a divided thoroughfare. Yet, it appears from the record before us that it may have only been a two lane road at the point where the dealership's driveway intersected it. And, to the extent that it was, one cannot infer from the record before us that appellant entered the driveway while traveling on Highway 6 in any particular direction.

time, that Highways 6 or 290 were rarely traveled at 2:30 a.m., that it was unusual for cars to be traveling on those roads at that time of night, that those traversing the two highways tended to be involved in misconduct, that it was unusual for cars to access that portion of Highway 6 or 290 via some non-descript speed under the posted limit, or that appellant drove away erratically.[5]  Again, each trooper admitted that nothing would have caused them to question or suspect the activities of appellant had they not previously heard the broadcast of the anonymous tip.[6]

We recognize that acts or circumstances need not be criminal in themselves to create reasonable suspicion that misconduct is afoot. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).  Yet, to the extent that one attempts to use innocent circumstances to create suspicion of that ilk, the totality of those indicia must nonetheless permit one to *reasonably deduce* that criminal activity is afoot.  The same is true with regard to the corroboration of an anonymous tip.  While the indicia used as corroboration needed not be *per se* criminal, they must still be sufficient to permit one to reasonably deduce that

---

[5]Indeed, one who has driven on highways and interstates and seen others do so could reasonably conclude that accessing same at a reduced speed seems to be a common practice by many.

[6]That Trooper Gormly considered the practice suspicious does not mean that it was for purposes of a Fourth Amendment analysis. The standard applicable to determining the existence of probable cause and reasonable suspicion is objective, not subjective. *Dowler v. State*, 44 S.W.3d 666, 670 (Tex. App.–Austin 2001, pet. ref'd).  Thus, an officer's subjective belief that some act is suspicious alone does not make it suspicious. We must determine if the conclusion was reasonable given all the circumstances involved. And, in this case, utilizing a driveway to turnaround and then driving onto a neighboring highway at some incalculable speed does not, as a matter of law, permit an officer to reasonably deduce that the conduct was suspicious. This is especially so where the officer failed to testify that her conclusion was based on any experience or knowledge of the area, criminal conduct, or activities of a driver late at night. In sum, we are left holding that Gormly's observation was nothing more than unfounded surmise, conjecture or speculation, and such is not the stuff of reasonable suspicion. *Davis v. State*, 989 S.W.2d 859, 863 (Tex. App.–Austin 1999, pet. ref'd).

7

appellant engaged in the misconduct for which he was accused by the tipster. If it does not, then the tip cannot be said to be reliable.

Given the record developed below, one cannot reasonably deduce from appellant's mere use of the driveway of a closed business to turn-around late at night and his failure to then speed away that he had previously drove down the road illegally. Thus, that aspect of the anonymous tip accusing appellant of engaging in misconduct was not sufficiently corroborated, *see Stewart v. State, supra* (holding that the State failed to sufficiently corroborate the tip where the officer did not see appellant drive erratically or commit a traffic offense), and the tip was not shown to be reliable. And, since the tip was the sole allegation of misconduct or truly unusual activity committed by appellant, it did not vest the troopers with probable cause or reasonable suspicion to stop him. In holding otherwise, the trial court erred.

Next, the evidence tendered by the State to establish appellant's intoxication arose as a consequence of the illegal stop. Thus, it was impermissibly tainted. Had the trial court suppressed it as it should have, there would have been no basis upon which the State could have prosecuted appellant; at least the record before fails to indicate that the State had an alternate way to or other evidence upon which to secure a conviction. Consequently, we further hold that the error was harmful under Texas Rule of Appellate Procedure 44.2(a).

Accordingly, the judgment is reversed and the cause remanded to the trial court for further proceedings.[7]

---

[7]The admission of illegally seized evidence is trial error and requires remand for further proceedings, as opposed to acquittal. *Riley v. State*, 825 S.W.2d 699, 701 (Tex. Crim. App. 1992).

Brian Quinn
Justice

Publish.