NO. 07-06-0437-CV

IN THE COURT OF APPEALS
 
FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 5, 2007

______________________________


STANLEY EUGENE PARTEE, APPELLANT

V.

TEXAS DEPARTMENT OF PUBLIC SAFETY, APPELLEE


_________________________________

FROM THE 106TH DISTRICT COURT OF LYNN COUNTY; 

NO. 06-05-06368; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

_______________________________


Before CAMPBELL and PIRTLE, JJ. and BOYD, S.J.





OPINION


          Appellant, Stanley Eugene Partee, appeals from a judgment entered affirming an
order issued by the State Office of Administrative Hearings suspending his driver’s license
for two years pursuant to § 724.035 of the Texas Transportation Code Annotated (Vernon
Supp. 2007) for refusing a police officer’s request for a specimen of breath to determine
whether he was intoxicated. Partee contends no probable cause existed to believe he was
operating a motor vehicle in a public place while intoxicated, no reasonable suspicion
existed for his detention, and no probable cause existed for his arrest. We affirm.
Background
          On March 7, 2006, Deputy Jim Bingham of the Lynn County Sheriff’s Office 
received a call reporting a “dark green Ranch King pickup” weaving on Highway US 87
approximately eleven miles north of Tahoka, Texas. Bingham left Tahoka heading north
on US 87 and located a pickup matching the description facing southbound approximately
ten and one-half miles north of Tahoka on US 87. The pickup was off the roadway
between the shoulder and the bottom of a ditch. As Bingham approached, he noticed the
engine was running and the brake lights were illuminated. He looked through the driver-side window and observed the gearshift was in the “Drive” position. He also observed the
driver, Partee, appeared to be asleep with his foot on the brake pedal. Partee did not
respond when Bingham knocked on the window. 
          Bingham opened the driver-side door and moved the gearshift to the “Park” position. 
Partee awoke confused. Bingham asked Partee whether he was having any trouble and
Partee responded he was having marital problems. Bingham also asked for his driver’s
license. As they were talking, Bingham noticed a strong odor of alcohol emanating from
the cab. Bingham asked Partee if he had been drinking, and Partee admitted he had drank
a few beers several hours earlier. He also admitted there was alcohol in the pickup. 
Sheriff Franklin arrived, and being advised of the situation, called Trooper Callaway of the
Texas Department of Public Safety to assist. Bingham asked Partee to step out of the
pickup. Partee asked the reason for the request and Bingham explained he could smell
a strong odor of alcohol coming from the truck. After Partee refused repeated requests
to exit his pickup, Bingham removed him from the cab. Partee was then handcuffed,
patted down, and permitted to sit on the highway shoulder.
          Trooper Callaway arrived, removed Partee’s handcuffs, helped Partee to his feet,
and began his interview. Callaway immediately smelled alcohol on Partee. Partee’s
speech was slurred, his eyes were bloodshot, he swayed when he stood and he needed
the pickup for balance when walking. Partee admitted he had been drinking earlier and
acknowledged there were open containers of alcohol in the pickup. Callaway observed a
half-empty whiskey bottle in the pickup and Bingham found an open can of coke in the
console containing whiskey. 
          Callaway informed Partee he was going to administer field sobriety tests and Partee
refused to cooperate. Partee refused a preliminary breath test and, after he was given
statutory warnings and requested to provide a breath test, he again refused. Callaway
arrested Partee and placed him in his cruiser. On the way to the jail, Partee passed out
several times. 
          Partee requested an administrative hearing to contest the suspension of his driver’s
license. After the hearing, the Administrative Law Judge issued an order sustaining
suspension of Partee’s driver’s license. Partee appealed the ALJ’s decision to the Lynn
County Court, and the case was subsequently transferred to the 106th Judicial District
Court where the court affirmed the ALJ’s decision.
 Discussion
          The issues at the administrative hearing were whether: (1) a reasonable suspicion
or probable cause existed to stop and/or arrest Partee; (2) probable cause existed to
believe Partee was operating a motor vehicle in a public place while intoxicated; (3) Partee
was placed under arrest by the officer and was requested to submit to the taking of the
specimen; and (4) Partee refused to submit to the taking of the specimen on request of the
officer. Tex. Transp. Code Ann. § 724.042 (Vernon Supp. 2007).


 
          Partee does not appear to dispute whether he was intoxicated in a motor vehicle in
a public place. Neither does he dispute the lower court’s findings as to issues (3) and (4). 
Rather, he contends the trial court erred in its finding that probable cause existed to believe
he was “operating” a motor vehicle. Because Partee was asleep when Bingham first
approached his vehicle, he asserts he could not have been “operating” a motor vehicle. 
He next contends no reasonable suspicion existed to detain him because his truck was
legally stopped on the roadside and was stationary. As a result, Partee asserts his
removal from the pickup by Bingham was an illegal detention in violation of the Fourth
Amendment and, consequently, all evidence obtained afterwards should be suppressed
under the “fruit of the poisonous tree” doctrine. Finally, Partee asserts there was
insufficient evidence for the ALJ to find probable cause existed for his arrest. 
Standard of Review
          We review administrative license suspension decisions under a substantial evidence
standard. Mireles v. Tex. Dep’t of Pub. Safety, 9 S.W.3d 128, 131 (Tex. 1999); Tex. Dep’t.
of Pub. Safety v. Moore, 175 S.W.3d 270, 272 (Tex.App.–Houston [1st Dist.] 2004, no pet.);
Tex. Dep’t. of Pub. Safety v. Pucek, 22 S.W.3d 63, 67 (Tex.App.–Corpus Christi 2000, no
pet.). Under this standard, the administrative decision may not be reversed unless it
prejudices the substantial rights of an appellant because the administrative findings,
inferences, conclusions, or decisions are: 
(A) in violation of a constitutional or statutory provision;
(B) in excess of the agency’s statutory authority;
(C) made through unlawful procedure;
(D) affected by other error of law;
(E) not reasonably supported by substantial evidence considering the reliable
and probative evidence in the record as a whole; or
(F) arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion.
 
Tex. Gov’t Code Ann. § 2001.174(2) (Vernon 2000).
 
          We cannot substitute our judgment for the ALJ’s and must affirm the administrative
decision if it is supported by more than a scintilla of evidence. Mireles, 9 S.W.3d at 131. 
Thus, the issue is not whether the ALJ made a correct decision, but whether there is some
reasonable basis in the record to support the ALJ’s decision. Id. The ALJ’s findings,
inferences, conclusions, and decisions are presumed to be supported by substantial
evidence and the burden is on Partee to prove otherwise. City of El Paso v. Public Util.
Comm’n, 883 S.W.2d 179, 185 (Tex. 1994). The burden for overturning an agency ruling
is formidable, Pucek, 22 S.W.3d at 67, and the administrative decision may be sustained
even if the evidence preponderates against it. Mireles, 9 S.W.3d at 131.  
          I.        “Operating” A Motor Vehicle
          A person commits the offense of driving while intoxicated if the person is intoxicated
while operating a motor vehicle in a public place. See Tex. Penal Code Ann. § 49.04(a)
(Vernon 2003). While there is no statutory definition of the term “operate,” the Texas Court
of Criminal Appeals has determined that a person “operates” a vehicle when the totality of
the circumstances demonstrate the person took action to affect the functioning of the
vehicle in a manner that would enable its use. Denton v. State, 911 S.W.2d 388, 390
(Tex.Crim.App. 1995) citing Barton v. State, 882 S.W.2d 456, 460 (Tex.App.–Dallas 1994,
no writ). In Denton, the Court of Criminal Appeals held that “while driving does involve
operation, operation does not necessarily involve driving.” Id. at 389. Applying this
rationale, Partee’s application of the brake pedal, thereby restraining the vehicle’s actual
movement, falls within the definition of “operating a motor vehicle.” 
          Moreover, under § 724.042, the DPS is not required to prove Partee was in fact
“operating” a motor vehicle while intoxicated in order to suspend his license. See Tex.
Dep’t of Pub. Safety v. Butler, 110 S.W.3d 673, 677 (Tex.App.–Houston [14th Dist.] 2003,
no pet.). Because a license suspension is a civil matter, the DPS need only establish there
was probable cause to believe Partee was operating a motor vehicle while intoxicated. 
Church v. State, 942 S.W.2d 139, 140 (Tex.App.–Houston [1st Dist.] 1997, pet. ref’d). 
Thus, Partee’s first issue is a narrow one. That is, whether there is substantial evidence
in the record to support the ALJ’s finding that probable cause existed to believe Partee was
“operating” a motor vehicle even though he was initially found asleep.


 
          There are numerous cases where a DWI arrest or conviction has been upheld under
the totality of circumstances test even though the person “operating” the motor vehicle was
initially found to be asleep. For instance, person(s) asleep were found to be “operating”
their motor vehicle where the vehicle was parked by the roadway with its right front tire
against the curb, engine running, gearshift in “Drive” and lights on, Freeman v. State, 69
S.W.3d 374, 376 (Tex.App.–Dallas 2002, no pet.); stopped in a moving lane of traffic with
engine running, and the vehicle’s owner in the driver’s seat, Hearne v. State, 80 S.W.3d
677, 680 (Tex.App.–Houston [1st Dist.] 2002, no pet.); or stopped on a roadway with engine
running, lights on and the vehicle’s operator sitting behind steering wheel, State v. Savage,
III, 905 S.W.2d 272, 274 (Tex.App.–San Antonio 1995), aff’d 933 S.W.2d 497
(Tex.Crim.App. 1996).  
          Furthermore, prior to the adoption of the totality of circumstances test, person(s)
who were asleep were found to be “operating” their motor vehicle when the vehicle was
stopped in the middle of the road with engine running, gearshift in “Drive,” and operator
slumped behind the steering wheel with his foot on the brake, Ray v. State, 816 S.W.2d
97, 98 (Tex.App.–Dallas 1991, no writ); stopped in the roadway with engine running, lights
on and vehicle’s owner sitting behind the steering wheel, Pope v. State, 802 S.W.2d 418,
420 (Tex.App.–Austin 1991, no writ); stopped in the roadway at a location described by
anonymous tip facing oncoming traffic with engine running, lights on, and operator asleep
in driver’s seat with his foot on the brake, Hernandez v. State, 773 S.W.2d 761, 762
(Tex.App.–San Antonio 1989, no writ); and, vehicle found half in a ditch and half on a farm-to-market road with the operator alone behind the steering wheel with both feet on the
floorboard beneath the steering wheel, Reynolds v. State, 744 S.W.2d 156, 158-59
(Tex.App.–Amarillo 1987, writ ref’d).
          After receiving a call that a truck was weaving on US 87, Bingham was dispatched
to the area. Shortly thereafter, he encountered Partee’s truck near the location on the
highway where the pickup was reported to be weaving. Partee’s pickup matched the
description of the weaving vehicle and it was found to be straddling the shoulder and a
roadside ditch. Partee was alone and asleep behind the steering wheel with his foot on
the brake. His keys were in the ignition with the engine running, the brake lights
illuminated, and the gearshift engaged. Even though Partee was asleep, there is
substantial evidence to support the ALJ’s finding that there was probable cause to believe
Partee was operating a motor vehicle when he was discovered by Bingham. Partee’s first
issue is overruled. 
          II.       Reasonable Suspicion To Detain Or Stop
          Partee also asserts he was illegally detained when Bingham removed him from his
pickup and, as a result, any evidence obtained subsequent to his detention should have
been excluded from the administrative proceedings to suspend his license. In support, 
he asserts his detention stemmed solely from an anonymous tip in the absence of any
corroborating circumstances indicating he was operating a motor vehicle while intoxicated.
          There are three distinct categories of interactions between police officers and
citizens: encounters, investigative detentions, and arrests. State v. Perez, 85 S.W.3d 817,
819 (Tex.Crim.App. 2002). Encounters occur when police officers approach an individual
in public to ask questions, and do not require any justification whatsoever on the part of the
officer. Harper v. State, 217 S.W.3d 672, 674 (Tex.App.–Amarillo 2007, no pet.). 
Moreover, police officers do not violate the Fourth Amendment by merely approaching an
individual in a public place, by asking him if he is willing to answer some questions, by
putting questions to him if the person is willing to listen, or by offering in evidence in a
criminal prosecution his voluntary answers to such questions. Perez, 85 S.W.3d at 819.
           A stop is deemed an investigative detention when a police officer detains a person
reasonably suspected of criminal activity to determine his identity or to momentarily
maintain the status quo while seeking additional information. Hoag v. State, 728 S.W.2d
375, 380 (Tex.Crim.App. 1987). A law enforcement officer need not have probable cause
to detain an individual for investigative purposes. See Hall v. State, 74 S.W.3d 521, 525
(Tex.App.–Amarillo 2002, no pet.). Rather, the officer may conduct a temporary lawful
detention when he has a reasonable suspicion to believe a person is violating the law. 
Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Reasonable suspicion exists
if the officer has specific, articulable facts that, when combined with rational inferences
from those facts, would lead him to reasonably suspect a particular person has engaged
or is (or soon will be) engaging in criminal activity. Garcia v. State, 43 S.W.3d 527, 530
(Tex.Crim.App. 2001). The facts must create some reasonable suspicion that some
activity out of the ordinary is occurring or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication that the unusual activity is related
to crime. Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). That said, the acts
or circumstances need not be criminal in themselves to create reasonable suspicion. 
Woods v. State, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). Thus, we examine the totality
of the circumstances to determine whether Partee’s detention was reasonable and
justified.
          As previously discussed, Bingham was dispatched to investigate an anonymous tip
regarding possible criminal activity. Upon arriving at the scene, Bingham observed
Partee’s vehicle, with its engine running, straddling the shoulder and roadside ditch. 
Partee appeared to be asleep at the wheel. Unable to awaken Partee, Bingham then
opened the driver-side door and moved the gearshift to the “Park” position. Partee awoke
appearing confused. Up to this point, Bingham was engaged in an “encounter” with
Partee, and the record reflects no evidence indicating Bingham’s actions were such a
display of authority that a reasonable person would not have felt free to decline Bingham’s
request for compliance. See Harper, 217 S.W.3d at 674 (collected cases cited therein).
           As the two were talking, Bingham noticed a strong odor of alcohol emanating from
inside the cab. Bingham asked if Partee had been drinking, and he responded he had
drank a few beers several hours earlier. Partee also admitted there was alcohol in the
pickup. At this point, Bingham had specific articulable facts which, when combined with
rational inferences therefrom, allowed him to reasonably suspect Partee had been, and
was, operating a motor vehicle in a public place while intoxicated. Accordingly, Partee’s
subsequent detention was reasonable and justified. 
          Partee contends his detention was unreasonable because he was legally parked 
on the roadside. In determining whether an area is a public place for purposes of § 49.04,
the relevant inquiry is whether the public has access to the place. Shaub v. State, 99
S.W.3d 253, 256 (Tex.App.–Fort Worth 2003, no pet.). That Partee stopped in a public
place merely satisfied an element of the offense of driving while intoxicated and buttressed
Bingham’s reasonable suspicion. Whether Partee was legally parked is of no
consequence. 
          Partee also contends Bingham lacked reasonable suspicion because he did not
actually “see” Partee operate the pickup and did not know how long Partee had been
stopped by the roadside. Partee hypothecates that he could have parked his pickup by the
roadside and then became intoxicated. Under this proposed scenario, Partee asserts he
may have been publicly intoxicated but not intoxicated while operating a motor vehicle. As 
discussed above, “operating” a vehicle is not limited to “driving” a vehicle. Under the facts
of this case, Bingham was justified in believing that Partee was operating his vehicle. 
Accordingly, in light of the totality of the circumstances, substantial evidence supported the
ALJ’s determination that reasonable suspicion existed to detain Partee. His second issue
is overruled. 
          III.      Probable Cause To Arrest
          Partee contends there was insufficient evidence for the ALJ to find that Calloway
had probable cause to arrest him for operating a motor vehicle in a public place while
intoxicated. We have already ruled there was substantial evidence in support of the ALJ’s
finding that probable cause existed that Partee was “operating” his pickup when he was
discovered by Bingham–even though he was asleep. And, having stopped by the side of
a highway accessible to the public, Partee and his vehicle were plainly situated in a public
place. This leaves us with the final element of the offense – intoxication. Accordingly, we
examine whether there was substantial evidence supporting the ALJ’s determination that
probable cause existed, at the time of Partee’s arrest, that he was intoxicated. 
          Trooper Callaway arrived shortly after Partee was detained and continued the
investigation.


 Callaway immediately smelled alcohol on Partee. Partee’s speech was
slurred, his eyes were bloodshot, he swayed when he stood, and relied on his truck for
balance when walking. Partee admitted he had been drinking earlier and acknowledged
there were open containers of alcohol in the pickup. When Callaway informed Partee he
was going to administer field sobriety tests, Partee refused to cooperate. Partee also
refused a preliminary breath test and, after he was given statutory warnings and requested
to provide a breath test, he again refused. Callaway arrested Partee and placed him in his
cruiser. On the way to the jail, Partee passed out several times. Based upon this record,
a finding of intoxication was supported by sufficient probable cause. Partee’s third issue
is overruled. 
 Conclusion
          Having overruled all three issues, the trial court’s judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                  Justice