Opinion filed June 14,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00297-CR 

                                                    __________

 

                                    NORRIS
RAY HILL, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 278th District Court

 

                                                           Walker
County, Texas

 

                                                      Trial
Court Cause No. 24593

 



 

M
E M O R A N D U M   O P I N I O N

            The
jury convicted Norris Ray Hill of possession of cocaine in an amount of less
than one gram.  See Tex. Health
& Safety Code Ann. § 481.115 (West 2010).  After finding both
enhancement paragraphs true, the jury assessed punishment at confinement in the
Institutional Division of the Texas Department of Criminal Justice for a term
of ten years.  The trial court sentenced Hill accordingly and certified his
right to appeal.  Hill appeals his conviction in two issues.  We affirm.

            In
his first issue on appeal, Hill contends that the trial court erred when it
denied Hill’s motion to suppress.  Specifically, Hill argues that the arresting
officer did not have reasonable suspicion to detain him and that his consent,
if he even gave consent, was tainted by the continuation of the unlawful
detention and by the fact that the arresting officer placed him in handcuffs.

            We
review a trial court’s ruling on a motion to suppress under a bifurcated
standard of review.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000).  When the trial court does not make explicit findings of historical
facts, we review the evidence adduced at the suppression hearing in the light
most favorable to the trial court’s ruling.  Id.  We also give
deference to the trial court’s rulings on mixed questions of law and fact when
those rulings turn on an evaluation of credibility and demeanor.  Guzman v.
State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).  Where such rulings do not
turn on an evaluation of credibility and demeanor, we review the trial court’s
actions de novo.  Id.

            At
the suppression hearing, Hill argued that the arresting officer did not have
reasonable suspicion to detain him initially; that, when the arresting officer
handcuffed him, it was not for officer safety but was an arrest not supported
by probable cause; and that the search of his vehicle was not consensual.  Hill
did not testify at the suppression hearing.  The only testimony came from the
arresting officer, Sergeant Brad Fullwood of the Walker County Sheriff’s
Department.

            Sergeant
Fullwood testified that, on July 8, 2008, he was on patrol and that, at approximately
10:45 p.m., he observed Hill turning into a driveway off Highway 19 just north
of Huntsville.  Less than a minute later, Sergeant Fullwood saw Hill pull out
of the driveway he had just turned into.  He decided to investigate because he
thought that it was odd that Hill pulled into the driveway for less than a
minute and because there had been a lot of burglaries in the area.  When Hill
pulled out of the driveway and continued to travel northbound on Highway 19,
Sergeant Fullwood was in front of Hill and was also traveling northbound on
Highway 19.  Highway 19 is a divided highway with limited crossovers.  In order
to get behind Hill so that he could follow him, Sergeant Fullwood looped around
and drove southbound until the next crossover and then looped around again to
get behind Hill.  He observed Hill turn into another driveway, which led to a
trucking business.  The trucking business was not open at the time, nor were
any other businesses in the area.  Sergeant Fullwood did not necessarily think
that Hill’s conduct was unusual because he had found from routinely
investigating people that drove into the trucking business at night that it was
usually an employee preparing to haul a load.  However, he was aware that
eighteen-wheelers had been broken into at the trucking business and that CB
radios had been stolen out of those eighteen-wheelers.  Sergeant Fullwood
testified that the surrounding area probably contained one residence and two
businesses.  He was not sure whether the first driveway that Hill turned into
led to a residence or a business.

            Sergeant Fullwood decided to
make contact with Hill to see if he was an employee or if he was someone that
should not be in the area and was possibly committing a trespass.  He activated
his lights and pulled in behind Hill’s vehicle to detain him.  After he had
stopped Hill, Sergeant Fullwood asked him why he was pulling in driveways of
closed businesses.  Hill responded that he thought Sergeant Fullwood might be
his girlfriend and that he was trying to avoid her because he did not want her
to see him out there under those circumstances.  Sergeant Fullwood did not
believe there was any way someone could mistake a marked patrol car with a
light bar on top for another type of passenger vehicle.

            Once Sergeant Fullwood
determined that Hill was not an employee and that Hill was possibly committing
a trespass or intending to commit a burglary, he asked Hill to step out of the
vehicle.  He asked Hill if he had any weapons on him, and Hill responded that
he had a knife.   Sergeant Fullwood recognized Hill’s name from an aggravated
assault case that he had worked on and knew that Hill had previously stabbed
his wife.  During the detention, Hill was polite but nervous.  When Sergeant
Fullwood asked Hill a question, he would initially glance down and hesitate
before he answered.  Sergeant Fullwood’s training and experience led him to
believe that Hill possibly was being deceptive in his answers.  While
continuing to ask Hill questions, he observed Hill sweating profusely, moving
his feet, hesitating to answer, and avoiding eye contact by looking at the
ground.  Sergeant Fullwood acknowledged that Hill could have been sweating
because it was July in Texas; he was unsure whether Hill’s vehicle had an air conditioner. 
Hill said that he pulled into the driveways to turn around, but Sergeant
Fullwood felt that Hill was lying.  Sergeant Fullwood had called a backup unit,
but at this point in the detention, he was still waiting for the unit to
arrive.  He placed Hill in handcuffs for officer safety.

            While waiting on the backup
unit, Sergeant Fullwood asked Hill if he could search his vehicle.  Sergeant
Fullwood testified that he asked Hill if he could search his vehicle because he
was still “trying to determine if there was any kind of criminal activity
afoot.”  Hill agreed to allow him to search the vehicle, and Sergeant Fullwood
found what he believed to be a usable amount of crack cocaine in the driver’s
seat, as well as a crack cocaine rock on the passenger’s side.

            In addition to Sergeant Fullwood’s
testimony, the State offered the in-car video of the encounter.  The trial
court admitted the video without objection, and the State played the video for
the court.

            We
will first address whether the initial detention of Hill was lawful.  A
temporary detention is lawful when it is supported by reasonable suspicion.  Balentine
v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).  Reasonable suspicion
exists “when the detaining officer has specific articulable facts, which taken
together with rational inferences from those facts, lead him to conclude that
the person detained actually is, has been, or soon will be engaged in criminal
activity.”  Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); see
also Terry v. Ohio, 392 U.S. 1, 21 (1968) (“[T]he police officer must be
able to point to specific and articulable facts which, taken together with
rational inferences from those facts, reasonably warrant that intrusion.”).  In
determining whether reasonable suspicion exists, we consider the totality of
the circumstances under an objective standard.  Garcia v. State, 43
S.W.3d 527, 530 (Tex. Crim. App. 2001). The subjective intentions or motives of
the officer are irrelevant to the determination.  Id.  Thus, we look to
see whether the facts available to the officer at the moment of the detention
would warrant a reasonably prudent officer to believe that the detention was
appropriate.  Terry, 392 U.S. at 21–22.

            Hill
directs us to several statements made by Sergeant Fullwood at the suppression hearing
to support his assertion that Sergeant Fullwood lacked reasonable suspicion to
initially detain him: (1) the area was not a high-crime area; (2) Hill did not
commit a traffic offense; (3) he found nothing unusual about Hill’s
driving; (4) although he claimed he was investigating a possible trespass
situation, he also admitted that a driver using a driveway to turn around would
not be committing a trespass; (5) he conceded that, prior to the search of
Hill’s car, he did not have reason to believe that Hill had committed a crime; and
(6) his belief that Hill was involved in criminal activity was based on a
hunch.

            If
we were to only consider these statements in isolation from the rest of
Sergeant Fullwood’s testimony, we would have to agree with Hill that Sergeant
Fullwood lacked reasonable suspicion to initially detain him.  However, we do
not consider isolated testimony when determining whether reasonable suspicion
exists; instead, we view the record as a whole in the light most favorable to
the trial court’s ruling.  See Carmouche, 10 S.W.3d at 327.  While
Sergeant Fullwood did state that he did not have any reason to believe that
Hill had committed a crime prior to the search, he also stated multiple times
that Hill’s conduct of pulling into driveways of closed businesses where
burglaries had taken place caused him to believe that Hill might be committing
a trespass or scoping out the area to later commit a burglary.  In addition,
Sergeant Fullwood did not testify that his belief that Hill was involved in
criminal activity was based only on a hunch but, rather, that his hunch was
coupled with Hill’s actions.  A hunch coupled with the specific actions of the
suspect is more than an inarticulate hunch.  See Terry, 392 U.S. at 22. 
On redirect, Sergeant Fullwood clarified his statement that he did not
believe Hill’s driving was unusual.  Sergeant Fullwood explained that it would
be unusual for the regular passerby but that it does happen.  He also stated
that he would call Hill’s driving suspicious.

            Hill
directs us to two cases to show where similar conduct did not justify a
temporary detention.  We find both cases to be distinguishable from the facts
at issue here.  In State v. Garcia-Cantu, 253 S.W.3d 236, 239 (Tex.
Crim. App. 2008), the arresting officer testified that, when he pulled up
behind Garcia-Cantu, he was not detaining him but just wanted to see what he
and the passenger were doing in a Ford truck with the dome light on parked in a
neighborhood at 4:00 a.m.  The court held that the encounter between the
officer and Garcia-Cantu was not a consensual encounter but was an
investigative detention that required the officer to articulate a reasonable
suspicion that criminal activity was afoot.  253 S.W.3d at 249.  The court did
not evaluate whether, under the totality of the circumstances, the officer had
reasonable suspicion to detain the defendant because the State conceded that
the trial court would not have abused its discretion in granting the motion to
suppress if the defendant was in fact detained.  Id. at 238 n.4.  It
appears that the only specific facts that the officer testified to at the suppression
hearing that could possibly give rise to reasonable suspicion that criminal
activity was afoot were as follows: (1) Garcia-Cantu and a passenger were
sitting in a parked truck at 4:00 a.m.; (2) the truck was parked at the end of
a dead-end street, with two houses on the right side, railroad tracks on the
left, and high grass and woods at the end of the street; and (3) it was a high-crime
area for drugs and prostitution.  Id. at 239.  The officer gave no
reason for approaching the vehicle other than he wanted to see what the two
people were doing in the truck.  Id.  In addition, a police call sheet
showed that only two drug arrests and no prostitution arrests had occurred in
that area within the previous six months.  Id.

            Here,
Sergeant Fullwood testified that Hill’s conduct of pulling into a driveway and
immediately pulling out of the driveway only to pull into another driveway
caused him to suspect that Hill was committing a trespass or scoping out the
area in order to later commit a burglary.  Sergeant Fullwood knew that there
had been some burglaries of eighteen-wheelers in the area and testified that it
was part of his job to protect those businesses by investigating a potential
burglary.  Unlike the officer in Garcia-Cantu, Sergeant Fullwood was able
to point to specific facts that led him to believe criminal activity was afoot.

            The
second case that Hill relies on is Hall v. State, 74 S.W.3d 521 (Tex.
App.—Amarillo 2002, no pet.).  In Hall, the court found that a driver
pulling into the driveway of a car dealership to turn around at 2:30 a.m., when
the dealership was closed, was not sufficient to support a claim of reasonable
suspicion even when the officers received an anonymous tip that a similar
vehicle was driving on the wrong side of the road.  74 S.W.3d at 523–27.  The
officers never saw Hall drive on the wrong side of the road or commit any
traffic offenses, and the anonymous informant only described the vehicle as a
red truck.  Id. at 524.  In addition, one of the officers
testified that it was not unusual to see cars turning around in the
dealership’s driveway at that time of night.  Id.  The officers also
testified that, if they had not received the anonymous tip from the dispatcher,
they would not have had reasonable suspicion to stop Hall.  Id.

            Hall
is distinguishable from the facts at issue here because Sergeant Fullwood was
able to point to specific facts that he observed that led him to believe that
Hill was currently, had been, or was soon to be engaged in criminal activity.  Sergeant
Fullwood was not relying on an unsubstantiated anonymous tip in concluding that
criminal activity was afoot.  Although Hill did tell Sergeant Fullwood that he
was using the driveways that he pulled into to turn around, it would have been
impossible for him to use the driveways for that purpose because the highway
that Hill was traveling on was a divided highway separated by a grassy median
with limited crossover points.  The only way to turn around was to cross over
at a designated point like Sergeant Fullwood had to do in order to get behind
Hill so that he could follow him.

            We hold that the trial court did not err in
determining that Sergeant Fullwood had reasonable suspicion to detain Hill for
a brief investigation.  We now turn to whether Hill consented to the search of
his vehicle.

            Hill asserts that the video shows that he made no
audible response when Sergeant Fullwood asked him if he could search his
vehicle and, thus, that the record does not support that Hill positively and
unequivocally consented to the search.  In addition, Hill argues that, even if
he did consent to the search, the consent was tainted by the initial illegal
detention and by his arrest when Sergeant Fullwood placed him in handcuffs
prior to obtaining his consent to search.

The State contends that Hill has waived the
issue of consent because he did not make consent an issue at the suppression
hearing.  While Hill’s argument at the suppression hearing was focused on
whether Sergeant Fullwood had reasonable suspicion to detain him, defense
counsel also argued at the end of the hearing that the search was not
consensual, that Hill felt he had no choice but to consent, and that the
consent was a fruit of the poisonous tree.  Thus, the issue was raised at the
suppression hearing.

            Consent to search is a well-established exception
to the warrant and probable cause requirements of the Fourth Amendment.  Schneckloth
v. Bustamonte, 412 U.S. 218, 219 (1973); Meeks v. State, 692 S.W.2d
504, 509 (Tex. Crim. App. 1985).  For consent to be effective, it must be
positive and unequivocal and be given freely and voluntarily without coercion
or duress.  Meeks, 692 S.W.2d at 509.

Although Hill alleges that the video shows that
he made no audible response when Sergeant Fullwood asked him if he could search
his vehicle, we have reviewed the video, and that is not what the video shows. 
The video shows that, when Sergeant Fullwood asked Hill if he could search his
vehicle, Hill responded that it was his “girl’s vehicle.”  Sergeant Fullwood
replied, “Okay, do you care if I search it?”  Hill answered, “Yea, yea, you can
search it.”  Sergeant Fullwood responded, “You don’t care?”  It was at this
point in the video that there was no audible response.  Hill positively and
unequivocally consented to the search when he responded, “Yea, yea, you can
search it.”

Hill’s alternative argument that his consent
was tainted by the initial illegal detention and by Sergeant Fullwood arresting
him also fails.  Hill’s initial detention was supported by reasonable
suspicion; therefore, Hill’s consent was not tainted by an illegal detention.  Furthermore,
Sergeant Fullwood did not place Hill under arrest when he placed him in
handcuffs.

  An officer may place a citizen in handcuffs
without turning the investigative detention into an arrest when it is reasonably
necessary for the officer’s safety.  Balentine, 71 S.W.3d at 771.  Hill
argues that the reason he was placed in handcuffs was not for officer safety,
but because Sergeant Fullwood did not like the answers Hill was giving him.  While
the video shows that Sergeant Fullwood did not immediately place Hill in
handcuffs after learning he had a knife in his pocket, we cannot say that Sergeant
Fullwood’s actions amounted to an arrest.  When Sergeant Fullwood first learned
that Hill had a knife in his pocket, he instructed Hill to keep his hands away
from his pocket.  He then continued to ask Hill questions about what he was
doing in the area.  Sergeant Fullwood specifically asked Hill what he was doing
turning into the two driveways, and Hill responded that he was turning around. 
Sergeant Fullwood replied, “No, don’t.  Come on.  You’re going to turn this
into a big deal when it doesn’t have to be.  You’re sitting here lying to me.” 
Hill told him he was not lying, but Sergeant Fullwood did not believe him and
replied, “If you want to play it that way turn around and put your hands on the
car.”  Sergeant Fullwood placed Hill in handcuffs and removed the knife from
his pocket.  He then asked Hill if he could search the car.  When Sergeant
Fullwood placed Hill in handcuffs, he was alone in an isolated area with Hill
at night, he knew that Hill had a knife in his pocket, and he believed that
Hill was being deceptive, which made him more nervous.  Based on the totality
of the circumstances, we conclude that Sergeant Fullwood was justified in
placing Hill in handcuffs for officer safety and, thus, that Hill was not under
arrest prior to giving consent.  Therefore, Hill’s consent was not tainted by
an illegal arrest.

Because Sergeant Fullwood’s actions were lawful
at all stages of the four and one-half minute investigative detention of Hill, we
hold that the trial court did not err in denying his motion to suppress.  We
overrule Hill’s first issue.

            In his second issue, Hill alleges that the trial
court erred when it denied his request for a jury instruction under Article
38.23 of the Texas Code of Criminal Procedure.  When a fact question arises at
trial regarding how evidence was obtained, Article 38.23 requires the trial
court to instruct the jury to disregard the evidence if the jury believes that
the evidence was obtained in violation of the Constitution or laws of the
United States or of Texas.  See Tex.
Code Crim. Proc. Ann. art. 38.23 (West 2005).  Hill’s request was for
the jury to determine whether Sergeant Fullwood frisked Hill or conducted a
full-blown search of Hill during the detention.   Whether an officer’s actions
amount to a frisk or a search is a legal question, not a factual question, and
thus no instruction is required.  See Oursbourn v. State, 259 S.W.3d
159, 178 (Tex. Crim. App. 2008) (legal questions never go to the jury); Madden
v. State, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (“If there is no
disputed factual issue, the legality of the conduct is determined by the trial
judge alone, as a question of law.”); Garza v. State, 126 S.W.3d 79, 88
(Tex. Crim. App. 2004) (“[W]hether the scope of the search was within
permissible boundaries was therefore a question of law, not a question of fact
for the jury.”).  In addition, Sergeant Fullwood did not find anything on
Hill’s person except for the knife that Hill told him he had in his pocket. 
Therefore, there was no evidence that the jury could have disregarded even if given
the requested instruction.  We overrule Hill’s second issue.

            The judgment of the trial court
is affirmed.

 

                                                                                    

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

June 14, 2012

Do not publish.  See Tex. R. App. P.  47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.