**Opinion filed June 14, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00297-CR
_____

## NORRIS RAY HILL, Appellant

## V.

## STATE OF TEXAS, Appellee

---

**On Appeal from the 278th District Court**

**Walker County, Texas**

**Trial Court Cause No. 24593**

---

## MEMORANDUM OPINION

The jury convicted Norris Ray Hill of possession of cocaine in an amount of less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). After finding both enhancement paragraphs true, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years. The trial court sentenced Hill accordingly and certified his right to appeal. Hill appeals his conviction in two issues. We affirm.

In his first issue on appeal, Hill contends that the trial court erred when it denied Hill's motion to suppress. Specifically, Hill argues that the arresting officer did not have reasonable

suspicion to detain him and that his consent, if he even gave consent, was tainted by the continuation of the unlawful detention and by the fact that the arresting officer placed him in handcuffs.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). When the trial court does not make explicit findings of historical facts, we review the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Id.* We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

At the suppression hearing, Hill argued that the arresting officer did not have reasonable suspicion to detain him initially; that, when the arresting officer handcuffed him, it was not for officer safety but was an arrest not supported by probable cause; and that the search of his vehicle was not consensual. Hill did not testify at the suppression hearing. The only testimony came from the arresting officer, Sergeant Brad Fullwood of the Walker County Sheriff's Department.

Sergeant Fullwood testified that, on July 8, 2008, he was on patrol and that, at approximately 10:45 p.m., he observed Hill turning into a driveway off Highway 19 just north of Huntsville. Less than a minute later, Sergeant Fullwood saw Hill pull out of the driveway he had just turned into. He decided to investigate because he thought that it was odd that Hill pulled into the driveway for less than a minute and because there had been a lot of burglaries in the area. When Hill pulled out of the driveway and continued to travel northbound on Highway 19, Sergeant Fullwood was in front of Hill and was also traveling northbound on Highway 19. Highway 19 is a divided highway with limited crossovers. In order to get behind Hill so that he could follow him, Sergeant Fullwood looped around and drove southbound until the next crossover and then looped around again to get behind Hill. He observed Hill turn into another driveway, which led to a trucking business. The trucking business was not open at the time, nor were any other businesses in the area. Sergeant Fullwood did not necessarily think that Hill's conduct was unusual because he had found from routinely investigating people that drove into the trucking business at night that it was usually an employee preparing to haul a load. However,

2

he was aware that eighteen-wheelers had been broken into at the trucking business and that CB radios had been stolen out of those eighteen-wheelers. Sergeant Fullwood testified that the surrounding area probably contained one residence and two businesses. He was not sure whether the first driveway that Hill turned into led to a residence or a business.

Sergeant Fullwood decided to make contact with Hill to see if he was an employee or if he was someone that should not be in the area and was possibly committing a trespass. He activated his lights and pulled in behind Hill's vehicle to detain him. After he had stopped Hill, Sergeant Fullwood asked him why he was pulling in driveways of closed businesses. Hill responded that he thought Sergeant Fullwood might be his girlfriend and that he was trying to avoid her because he did not want her to see him out there under those circumstances. Sergeant Fullwood did not believe there was any way someone could mistake a marked patrol car with a light bar on top for another type of passenger vehicle.

Once Sergeant Fullwood determined that Hill was not an employee and that Hill was possibly committing a trespass or intending to commit a burglary, he asked Hill to step out of the vehicle. He asked Hill if he had any weapons on him, and Hill responded that he had a knife. Sergeant Fullwood recognized Hill's name from an aggravated assault case that he had worked on and knew that Hill had previously stabbed his wife. During the detention, Hill was polite but nervous. When Sergeant Fullwood asked Hill a question, he would initially glance down and hesitate before he answered. Sergeant Fullwood's training and experience led him to believe that Hill possibly was being deceptive in his answers. While continuing to ask Hill questions, he observed Hill sweating profusely, moving his feet, hesitating to answer, and avoiding eye contact by looking at the ground. Sergeant Fullwood acknowledged that Hill could have been sweating because it was July in Texas; he was unsure whether Hill's vehicle had an air conditioner. Hill said that he pulled into the driveways to turn around, but Sergeant Fullwood felt that Hill was lying. Sergeant Fullwood had called a backup unit, but at this point in the detention, he was still waiting for the unit to arrive. He placed Hill in handcuffs for officer safety.

While waiting on the backup unit, Sergeant Fullwood asked Hill if he could search his vehicle. Sergeant Fullwood testified that he asked Hill if he could search his vehicle because he was still "trying to determine if there was any kind of criminal activity afoot." Hill agreed to allow him to search the vehicle, and Sergeant Fullwood found what he believed to be a usable

amount of crack cocaine in the driver's seat, as well as a crack cocaine rock on the passenger's side.

In addition to Sergeant Fullwood's testimony, the State offered the in-car video of the encounter. The trial court admitted the video without objection, and the State played the video for the court.

We will first address whether the initial detention of Hill was lawful. A temporary detention is lawful when it is supported by reasonable suspicion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Reasonable suspicion exists "when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968) ("[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."). In determining whether reasonable suspicion exists, we consider the totality of the circumstances under an objective standard. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The subjective intentions or motives of the officer are irrelevant to the determination. *Id.* Thus, we look to see whether the facts available to the officer at the moment of the detention would warrant a reasonably prudent officer to believe that the detention was appropriate. *Terry*, 392 U.S. at 21–22.

Hill directs us to several statements made by Sergeant Fullwood at the suppression hearing to support his assertion that Sergeant Fullwood lacked reasonable suspicion to initially detain him: (1) the area was not a high-crime area; (2) Hill did not commit a traffic offense; (3) he found nothing unusual about Hill's driving; (4) although he claimed he was investigating a possible trespass situation, he also admitted that a driver using a driveway to turn around would not be committing a trespass; (5) he conceded that, prior to the search of Hill's car, he did not have reason to believe that Hill had committed a crime; and (6) his belief that Hill was involved in criminal activity was based on a hunch.

If we were to only consider these statements in isolation from the rest of Sergeant Fullwood's testimony, we would have to agree with Hill that Sergeant Fullwood lacked reasonable suspicion to initially detain him. However, we do not consider isolated testimony when determining whether reasonable suspicion exists; instead, we view the record as a whole in

the light most favorable to the trial court's ruling. *See Carmouche*, 10 S.W.3d at 327. While Sergeant Fullwood did state that he did not have any reason to believe that Hill had committed a crime prior to the search, he also stated multiple times that Hill's conduct of pulling into driveways of closed businesses where burglaries had taken place caused him to believe that Hill might be committing a trespass or scoping out the area to later commit a burglary. In addition, Sergeant Fullwood did not testify that his belief that Hill was involved in criminal activity was based only on a hunch but, rather, that his hunch was coupled with Hill's actions. A hunch coupled with the specific actions of the suspect is more than an inarticulate hunch. *See Terry*, 392 U.S. at 22. On redirect, Sergeant Fullwood clarified his statement that he did not believe Hill's driving was unusual. Sergeant Fullwood explained that it would be unusual for the regular passerby but that it does happen. He also stated that he would call Hill's driving suspicious.

Hill directs us to two cases to show where similar conduct did not justify a temporary detention. We find both cases to be distinguishable from the facts at issue here. In *State v. Garcia-Cantu*, 253 S.W.3d 236, 239 (Tex. Crim. App. 2008), the arresting officer testified that, when he pulled up behind Garcia-Cantu, he was not detaining him but just wanted to see what he and the passenger were doing in a Ford truck with the dome light on parked in a neighborhood at 4:00 a.m. The court held that the encounter between the officer and Garcia-Cantu was not a consensual encounter but was an investigative detention that required the officer to articulate a reasonable suspicion that criminal activity was afoot. 253 S.W.3d at 249. The court did not evaluate whether, under the totality of the circumstances, the officer had reasonable suspicion to detain the defendant because the State conceded that the trial court would not have abused its discretion in granting the motion to suppress if the defendant was in fact detained. *Id.* at 238 n.4. It appears that the only specific facts that the officer testified to at the suppression hearing that could possibly give rise to reasonable suspicion that criminal activity was afoot were as follows: (1) Garcia-Cantu and a passenger were sitting in a parked truck at 4:00 a.m.; (2) the truck was parked at the end of a dead-end street, with two houses on the right side, railroad tracks on the left, and high grass and woods at the end of the street; and (3) it was a high-crime area for drugs and prostitution. *Id.* at 239. The officer gave no reason for approaching the vehicle other than he wanted to see what the two people were doing in the truck. *Id.* In addition, a police call sheet showed that only two drug arrests and no prostitution arrests had occurred in that area within the previous six months. *Id.*

5

Here, Sergeant Fullwood testified that Hill's conduct of pulling into a driveway and immediately pulling out of the driveway only to pull into another driveway caused him to suspect that Hill was committing a trespass or scoping out the area in order to later commit a burglary. Sergeant Fullwood knew that there had been some burglaries of eighteen-wheelers in the area and testified that it was part of his job to protect those businesses by investigating a potential burglary. Unlike the officer in *Garcia-Cantu*, Sergeant Fullwood was able to point to specific facts that led him to believe criminal activity was afoot.

The second case that Hill relies on is *Hall v. State*, 74 S.W.3d 521 (Tex. App.—Amarillo 2002, no pet.). In *Hall*, the court found that a driver pulling into the driveway of a car dealership to turn around at 2:30 a.m., when the dealership was closed, was not sufficient to support a claim of reasonable suspicion even when the officers received an anonymous tip that a similar vehicle was driving on the wrong side of the road. 74 S.W.3d at 523–27. The officers never saw Hall drive on the wrong side of the road or commit any traffic offenses, and the anonymous informant only described the vehicle as a red truck. *Id.* at 524. In addition, one of the officers testified that it was not unusual to see cars turning around in the dealership's driveway at that time of night. *Id.* The officers also testified that, if they had not received the anonymous tip from the dispatcher, they would not have had reasonable suspicion to stop Hall. *Id.*

*Hall* is distinguishable from the facts at issue here because Sergeant Fullwood was able to point to specific facts that he observed that led him to believe that Hill was currently, had been, or was soon to be engaged in criminal activity. Sergeant Fullwood was not relying on an unsubstantiated anonymous tip in concluding that criminal activity was afoot. Although Hill did tell Sergeant Fullwood that he was using the driveways that he pulled into to turn around, it would have been impossible for him to use the driveways for that purpose because the highway that Hill was traveling on was a divided highway separated by a grassy median with limited crossover points. The only way to turn around was to cross over at a designated point like Sergeant Fullwood had to do in order to get behind Hill so that he could follow him.

We hold that the trial court did not err in determining that Sergeant Fullwood had reasonable suspicion to detain Hill for a brief investigation. We now turn to whether Hill consented to the search of his vehicle.

Hill asserts that the video shows that he made no audible response when Sergeant Fullwood asked him if he could search his vehicle and, thus, that the record does not support that

Hill positively and unequivocally consented to the search. In addition, Hill argues that, even if he did consent to the search, the consent was tainted by the initial illegal detention and by his arrest when Sergeant Fullwood placed him in handcuffs prior to obtaining his consent to search.

The State contends that Hill has waived the issue of consent because he did not make consent an issue at the suppression hearing. While Hill's argument at the suppression hearing was focused on whether Sergeant Fullwood had reasonable suspicion to detain him, defense counsel also argued at the end of the hearing that the search was not consensual, that Hill felt he had no choice but to consent, and that the consent was a fruit of the poisonous tree. Thus, the issue was raised at the suppression hearing.

Consent to search is a well-established exception to the warrant and probable cause requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985). For consent to be effective, it must be positive and unequivocal and be given freely and voluntarily without coercion or duress. *Meeks*, 692 S.W.2d at 509.

Although Hill alleges that the video shows that he made no audible response when Sergeant Fullwood asked him if he could search his vehicle, we have reviewed the video, and that is not what the video shows. The video shows that, when Sergeant Fullwood asked Hill if he could search his vehicle, Hill responded that it was his "girl's vehicle." Sergeant Fullwood replied, "Okay, do you care if I search it?" Hill answered, "Yea, yea, you can search it." Sergeant Fullwood responded, "You don't care?" It was at this point in the video that there was no audible response. Hill positively and unequivocally consented to the search when he responded, "Yea, yea, you can search it."

Hill's alternative argument that his consent was tainted by the initial illegal detention and by Sergeant Fullwood arresting him also fails. Hill's initial detention was supported by reasonable suspicion; therefore, Hill's consent was not tainted by an illegal detention. Furthermore, Sergeant Fullwood did not place Hill under arrest when he placed him in handcuffs.

An officer may place a citizen in handcuffs without turning the investigative detention into an arrest when it is reasonably necessary for the officer's safety. *Balentine*, 71 S.W.3d at 771. Hill argues that the reason he was placed in handcuffs was not for officer safety, but because Sergeant Fullwood did not like the answers Hill was giving him. While the video shows

7

that Sergeant Fullwood did not immediately place Hill in handcuffs after learning he had a knife in his pocket, we cannot say that Sergeant Fullwood's actions amounted to an arrest. When Sergeant Fullwood first learned that Hill had a knife in his pocket, he instructed Hill to keep his hands away from his pocket. He then continued to ask Hill questions about what he was doing in the area. Sergeant Fullwood specifically asked Hill what he was doing turning into the two driveways, and Hill responded that he was turning around. Sergeant Fullwood replied, "No, don't. Come on. You're going to turn this into a big deal when it doesn't have to be. You're sitting here lying to me." Hill told him he was not lying, but Sergeant Fullwood did not believe him and replied, "If you want to play it that way turn around and put your hands on the car." Sergeant Fullwood placed Hill in handcuffs and removed the knife from his pocket. He then asked Hill if he could search the car. When Sergeant Fullwood placed Hill in handcuffs, he was alone in an isolated area with Hill at night, he knew that Hill had a knife in his pocket, and he believed that Hill was being deceptive, which made him more nervous. Based on the totality of the circumstances, we conclude that Sergeant Fullwood was justified in placing Hill in handcuffs for officer safety and, thus, that Hill was not under arrest prior to giving consent. Therefore, Hill's consent was not tainted by an illegal arrest.

Because Sergeant Fullwood's actions were lawful at all stages of the four and one-half minute investigative detention of Hill, we hold that the trial court did not err in denying his motion to suppress. We overrule Hill's first issue.

In his second issue, Hill alleges that the trial court erred when it denied his request for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure. When a fact question arises at trial regarding how evidence was obtained, Article 38.23 requires the trial court to instruct the jury to disregard the evidence if the jury believes that the evidence was obtained in violation of the Constitution or laws of the United States or of Texas. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). Hill's request was for the jury to determine whether Sergeant Fullwood frisked Hill or conducted a full-blown search of Hill during the detention. Whether an officer's actions amount to a frisk or a search is a legal question, not a factual question, and thus no instruction is required. *See Oursbourn v. State*, 259 S.W.3d 159, 178 (Tex. Crim. App. 2008) (legal questions never go to the jury); *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) ("If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law."); *Garza v. State*, 126 S.W.3d 79, 88

(Tex. Crim. App. 2004) ("[W]hether the scope of the search was within permissible boundaries was therefore a question of law, not a question of fact for the jury."). In addition, Sergeant Fullwood did not find anything on Hill's person except for the knife that Hill told him he had in his pocket. Therefore, there was no evidence that the jury could have disregarded even if given the requested instruction. We overrule Hill's second issue.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


June 14, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.